487 A.2d 424

**Ronald E. RESSLER and Fred V. Hertwig, Jr., Appellants,**

v.

**JONES MOTOR CO., INC., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 15, 1984.

Filed Jan. 18, 1985.

Thomas A. Ehrgood, Lebanon, for appellants.

Michael J. Ossip, Philadelphia, for appellee.

Before WICKERSHAM, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

Appellants Ressler and Hertwig brought suit on behalf of themselves and a class of non-union employees of appellee Jones Motor Company's now defunct General Commodities Division ("GCD"), seeking recovery of sums withheld from their wages as "contributions" to an Earnings Participation Plan ("EPP" or "Plan"). The Plan placed salaries on a sliding scale varying as a function of the employer's profit or loss ratio, and was instituted by Jones Motor during a period of significant financial hardship. The trial court found no violation of the Commonwealth's Wage Payment and Collection Law ("WPCL"),[1] and granted summary judgment on behalf of Jones Motor upon a determination that the "contributions" to the Plan were wage reductions. Appellants' motion for certification of a class action under Pa.R.C.P. 1707 was also denied without discussion. Because we find sufficient evidence in the record to establish that the sums withheld were "deductions" from pay, we reverse the trial court's order granting summary judgment to the employer.

1. Act of July 14, 1961, P.L. 637, § 1, *et seq.*, as amended, 43 P.S. § 260.1, *et seq.*

Our survey of the statutes and case law of this Commonwealth uncovers no definition of the term "deduction" as set forth in the WPCL beyond a group of specified "authorized deductions." [See *infra* at 606–609]. Therefore, a clear recitation of the events giving rise to this controversy is in order to establish precisely what type of salary adjustment we are here deeming to be a "deduction" from pay.

In 1979, the GCD began to suffer serious financial losses, which continued through 1980 and into 1981. In a desperate effort to reduce these losses, the EPP was instituted, which placed salaries on a sliding scale varying according to the GCD's ratio of total expenses to total revenues. According to the Plan proposal, when this ratio equals 95%, employees would draw their regular salaries. If the ratio is 96% or above, employees would "contribute" to the Plan based upon a figure related to the ratio and their wage brackets, with the amount withheld varying at each expense ratio. The proposal indicates further that if the expense ratio falls below 100%, "a lump sum adjustment payment will be made to plan participants." Even where the expense ratio falls to 94% or below, all employees, regardless of wage bracket, receive the same percentage bonus, calculated at each expense ratio.

Prior to implementation of the Plan, Jones Motor's management, including the named appellants, met with employees and explained the EPP, promoting it in terms of the company's ultimate survival. A key to the Plan's effectiveness was obtaining 100% participation by all employees, union and non-union alike. Approximately 97% of the GCD employees signed authorization forms agreeing to participate and stating they would be legally bound to "make contributions or receive benefits under the Plan." The EPP was implemented on June 14, 1981, at which time the expense ratio was 112%, resulting in smaller paychecks for all employees.

After approximately three months, a Delaware Teamster's Union local filed a grievance claiming the Plan violated their collective bargaining agreement. Jones Motor

agreed to discontinue the Plan for its union employees, and paid back the "contributions" they had already made.

Jones Motor continued the EPP with its non-union employees, but it proved to be an insufficient cost-cutting mechanism, and the GCD ceased operations on October 29, 1982. Appellants brought suit in the Court of Common Pleas of Lebanon County on behalf of themselves and a group of non-union employees for recovery of their "contributions," claiming they were withheld in violation of the WPCL. The amended complaint alleged breach of contract under the terms of the EPP agreement, and appellants further sought certification of a class action.

■ The trial judge determined the EPP to be "nothing more than a program of wage reductions (or increases should the company reenter a period of prosperity) dressed up in a fancy name to be more acceptable to the employees; . . ." and found no provisions "which, by any interpretation, would infer that the Defendant's employees could expect a return of the reduction which they realized in their paychecks." Opinion of July 26, 1983 at 11.[2] The court granted Jones Motor's motion for summary judgment, and denied appellants' motion for certification of a class action without discussion. Upon careful examination of the record, however, we believe the "contributions" withheld by Jones Motor from its employees' paychecks were wage deductions, thus raising a genuine issue of material fact as to conformity with the law of this Commonwealth.

Viewing the EPP in its entirety, it is clear to us that the sums withheld from employees' paychecks were deductions from earnings rather than reductions in salary. As noted previously, the "contributions" or "benefits" were to be

2. The court commented at footnote 3 of its opinion that, consistent with holding that the adjustments were "reductions" in wages as opposed to "deductions" from wages, the "contributions" under the EPP were not subject to payroll taxes, based upon statements of Jones Motor's President Sheehy to this effect. We note, however, that it is not for Mr. Sheehy to determine what qualifies as a wage for tax purposes, and find no mention in the record of any Internal Revenue Service advisory opinion on the matter.

calculated at each expense ratio level. There appears to be no fixed or easily ascertainable sum which would be withheld or paid out, and we find such indefinite, unpredictable amounts to more closely resemble deductions than reductions as held by the trial court. Furthermore, Jones Motor's President Sheehy, in a letter dated September 25, 1981, stated: "In order to avoid a possible strike action while we attempt to resolve the E.P.P. issue, I am temporarily suspending the *payroll deductions* for E.P.P. contributions from union personnel. The non-union personnel will be required to continue the participation." [Emphasis added].

Finally, and perhaps most persuasive, we find a letter dated July 22, 1982, from the Director of the Department of Labor and Industry's Bureau of Labor Standards. Responding to a request by Jones Motor's Vice President and General Counsel for clarification of a claim by a former terminal manager, the director states:

[The employee] advised us that $85.80 was deducted from his earned wages each pay period for a total of 20 pay periods from June 20 through October 30, 1981; a total of $1716.

Our claimant maintains he signed no authorization for the deduction in question which is identified on his pay slip as EPP contribution.

Unless Jones Motor can produce an authorization signed by [the employee] to permit this deduction we must consider said deduction illegal under the Wage Payment and Collection Law.

This letter is significant at this point in our analysis because it is the only indication we find in the record that the contributions were *identified* on employees' pay slips as an amount presumably subtracted from gross pay. Common sense dictates that salary reductions would not be so designated. This supports a conclusion that we are here dealing with deductions, much like any other type of deduction which would be noted on a pay slip. We must therefore turn to the WPCL to determine whether the amounts in question were lawfully withheld from employees' wages.

The Wage Payment and Collection Law states, in pertinent part:

**260.3  Regular payday**

(a) Wages other than fringe benefits and wage supplements.  Every employer shall pay all wages, other than fringe benefits and supplements, due to his employes on regular paydays designated in advance by the employer.... The wages shall be paid in lawful money of the United States or check, except that *deductions provided by the law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employe, may be made including deductions of contributions to employe benefits plans,* which are subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.  [Emphasis added]

(b) Fringe benefits and wage supplements.  Every employer who by agreement deducts union dues from employes' pay or agrees to pay or provide fringe benefits or wage supplements, must remit the deductions or pay or provide the fringe benefits or wage supplements, as required, within 10 days after such payments are required to be made to the union in case of dues or to a trust or pooled fund, or within 10 days after such payments are required to be made directly to the employe, or within 60 days of the date when proper claim was filed by the employe in situations where no required time for payment is specified.

43 P.S. § 260.3, *supra* n. 1.

Pursuant to this provision, 34 Pa.Code § 9.1 sets forth those deductions from wages authorized by law as promulgated by the Department of Labor and Industry.  The first twelve provisions delineate such deductions as, for example, contributions to employee welfare and pension plans, payments to credit unions and savings funds, contributions for charitable purposes, deductions for social security and taxes, labor organization dues, and other specified deductions. Deductions which are not listed under 34 Pa.Code § 9.1 (1–12) may fall under 34 Pa.Code § 9.1(13): "Such other

deductions authorized in writing by employes as *in the discretion of the Department is proper and in conformity with the intent and purpose of the Wage Payment and Collection Law* (43 P.S. §§ 260.1–260.12)." [Emphasis added].

■ Although Jones Motor obtained written authorizations from its employees, the record does not establish that the Department evaluated the EPP and determined the Plan to be in conformity with the WPCL. Appellee directs us to the Department's July 22, 1982 letter, referred to *supra*, claiming this establishes departmental approval of the Plan. We do not find this letter controlling in construing the entire EPP program as lawful. Absent departmental approval, the Plan was invalid, and Jones Motor wrongfully withheld wages due to its employees. An inquiry is therefore necessary on the factual issue of whether the Department of Labor and Industry evaluated and authorized the EPP as in conformity with the intent and purpose of the WPCL, and summary judgment was inappropriately granted.

■ Pa.R.C.P. 1035(b) provides that summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is well established that the moving party has the burden of showing that there is no genuine issue of material fact, and the record must be viewed in the light most favorable to the non-moving party. *First Mortgage Company of Pennsylvania v. McCall,* 313 Pa.Super. 54, 459 A.2d 406 (1983). The non-moving party may not, however, rely merely upon the controverted allegations of the pleadings, but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists. *Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973).

Upon examination of the pleadings, the summary judgment motion and supporting materials, the trial court found no genuine issue of material fact left for resolution. Turning to an affidavit submitted by appellant Hertwig, the trial judge asserted that Pa.R.C.P. 1035(d) precluded consideration of most of the statements the affidavit contained. Pa.R.C.P. 1035(d) provides that "[s]upporting and opposing affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein." The trial court dismissed Hertwig's affidavit either as not within the affiant's personal or first-hand knowledge, or as conclusions of law inappropriate in a supporting affidavit. The court thus found neither a significant dispute nor the raising of a genuine issue as to any material fact. Our examination of the relevant materials, however, indicates the existence of a genuine issue of material fact. We therefore reverse the granting of summary judgment, finding a significant dispute regarding departmental approval of the EPP.

Department of Labor and Industry evaluation of a proposed deduction would necessarily analyze conformity with the "intent and purpose" of the WPCL. We find it helpful here to consider what those purposes might be.

In *Weingrad v. Fischer & Porter Company*, 47 D. & C.2d 244 (C.C.P. Bucks Co.1968), the court provided a thoughtful analysis of the Wage Payment and Collection Law (in denying recovery to plaintiff by holding said statute to provide only for wages earned prior to termination of employment). Finding no cases directly bearing upon the question presented, the court turned to authority pertaining to the purpose for enacting similar statutes in other jurisdictions. The court quoted from the Supreme Court of Oregon in *State ex rel. Nilsen v. Oregon State Motor Assn.*, 248 Or. 133, 138, 432 P.2d 512, 515 (1967):

"The policy of the statute is to aid an employe in the prompt collection of compensation due him and to discourage an employer from using a position of economic supe-

riority as a lever to dissuade an employe from promptly collecting his agreed compensation ... The smaller the amount of the unpaid compensation the greater is the need for assistance in effecting collection."

The court in *Weingrad* cited similar interpretations by the Supreme Court of Missouri[3] and the Court of Appeals of New York,[4] and concluded: "It is clear from the foregoing that the purpose of statutes of this nature is to effect a quick payment of wages or compensation *due* in order to undercut any position of economic superiority possessed by the employer." *Weingrad, supra* at 251 (emphasis in original). *See also Commonwealth v. Lieberman*, 70 D. & C.2d 151 (C.C.P. Dauphin Co.1975) (an employee may not initiate criminal proceedings under the WPCL; Wickersham, J., writing for the Court of Common Pleas, finds the goal of the act, as enunciated in *Weingrad* and *Oregon State*, may be adequately achieved under the civil remedy provisions).

The *Weingrad* court was obviously concerned with the aspect of "wages due", but we believe the notion of economic superiority exercised by an employer in the payment (or non-payment) of wages is of equal import. If Jones Motor instituted a plan at will to allow for deductions from its employees' wages, we view this as the type of economic coercion which the statute addresses, and which the Department of Labor and Industry is empowered to regulate. Moreover, the Department, in promulgating the Act, has carefully delineated those deductions which are permitted. Provisions 1 through 12 of 34 Pa.Code § 9.1 specifically set forth acceptable deductions and we believe public policy, and no less common sense, dictates that the

3. "One of the objects of the statute is to effect a quick payment to the wage earner of wages due and unpaid at time of discharge." *Monterosso v. St. Louis Globe-Democrat Publishing Co.*, 368 S.W.2d 481, 489 (Mo.1963).

4. "The law affords wage earners ample civil remedies for the purpose of assuring them full payment of all ... benefits accruing to them under their contract of employment." *People v. Vetri*, 309 N.Y. 401, 408, 131 N.E.2d 568, 572 (1955).

Department have equal, if not greater, concern for those deductions which are not enumerated, but fall under 34 Pa.Code § 9.1(13) ("other deductions"). An earnings plan which affects wage payments deserves close scrutiny by the state agency empowered to assure that the interests of employees are protected. We therefore hold that a deduction from wages as herein described in the case before us is unlawful absent a showing of Department of Labor and Industry approval and written authorizations by employees.

■ This decision is not in any way intended to impair the ability of an employer or employee to modify the terms of an employment contract. Indeed, the law of this Commonwealth permits an employer to reduce the salary of an employee hired at will where the employee acquiesces in or agrees to the change. *See Trainer v. Laird,* 320 Pa. 414, 183 A. 40 (1936).[5] However, when an employer establishes a so-called earnings participation plan such as the EPP herein described, there is an obligation to analyze the plan to determine exactly what is involved. Our examination of Jones Motor's plan indicates that it is not an acceptable means of modifying salaries, and it therefore does not rise to the level of lawful wage reductions.

■ In response to appellants' first contention that the trial court erred in deferring consideration of appellants' motion for certification of a class action, we note that Pa.R.C.P. 1707(b) authorizes the trial judge to stay all class action aspects of the litigation pending the disposition of other motions. *See Canulli v. Allstate Insurance Co.,* 315 Pa.Super. 460, 462 A.2d 286 (1983). It is clearly within the trial court's discretion, and we find no error in deferring a class certification hearing while a motion for summary

5. Where appellant was hired at will pursuant to an oral agreement, our supreme court stated the contract "was subject to termination at any time by either party, and the employer or employee could modify it without limitation as the employer here did." *Trainer v. Laird,* 320 Pa. at 415, 183 A. at 40.

judgment is pending. However, our conclusion that appellee was not entitled to judgment as a matter of law due to the existence of a genuine and material factual issue requires that the trial court now reconsider appellants' cause of action. Thus, we reverse the granting of summary judgment on behalf of appellee Jones Motor Co., vacate the denial of the motion for certification of a class action, and remand with directions to proceed in accordance with this opinion.

Reversed and remanded. Jurisdiction relinquished.