## Jackson v. Sun Oil Company of Pennsylvania

*Michael F. Wenke,* for plaintiffs.
*Stephen J. Sundheim,* for defendants.

McGOVERN, *J.,* July 31, 1986 — Plaintiffs, Ernest Jackson and Helen Jackson have appealed from this court's order granting defendant's, Sun Oil Company of Pennsylvania (hereinafter Sun), motion for summary judgment.

Plaintiffs filed suit against Sun seeking damages for intentional infliction of emotional distress (outrageous conduct). Ernest Jackson had been employed by Sun as a mechanic in the burner service division and was required to visit businesses and homes in performance of maintenance and repair services on oil burners. On September 19, 1979, during the course of his employment, Mr. Jackson was sent to the home of a Mr. and Mrs. Miersky located at 22 Pancoast Avenue, Aston, Pa. to inspect and repair the furnace. Mrs. Miersky called on September 20, 1979, to complain that Mr. Jackson had asked Mrs. Miersky's 20-year-old daughter Rene, "Do you wear a bra?" and "Have enough loving from your boyfriend?" Mrs. Miersky did not want Mr. Jackson to come to her home again. Subse-

quent to this, Mr. Al Kuntz went to the Miersky home with Sun's Office Manager, Denise Johnson, and met with Mr. and Mrs. Miersky, Rene Miersky and her boyfriend. Rene Miersky said that Mr. Jackson had indeed made the noted comments and additionally claimed that Mr. Jackson had tried to look down her shirt and had touched her about the breast. Mr. Jackson denied the allegations. He was assigned to inside work, pending an investigation by Sun. Ernest Jackson, as Sun's request, took and "passed" a lie detector test on October 12, 1979 and he was advised of the test results at that time. Mr. Jackson was then permitted to resume his normal duties servicing Sun's customers.

Mr. Kuntz met with Mr. and Mrs. Miersky on November 13, 1979, and advised them that Ernest Jackson had successfully taken a lie detector test, the results of which indicated that plaintiff's denial of the accusation was truthful. Mr. Kuntz asked to speak to Rene but Mr. and Mrs. Miersky refused. Plaintiffs allege that Rene Miersky subsequently confessed that she wrongly accused Mr. Jackson and that Mr. Kuntz had knowledge of the girl's recantation.

Mr. Al Kuntz, in a chance meeting with Ernest Jackson during December 1984, is alleged to have acknowledged that Rene Miersky recanted. Plaintiffs then filed this action seeking to recover damages for intentional or reckless infliction of emotional distress (outrageous conduct). The sole basis for this cause of action is that defendant through its agents, servants or employees failed to publish to Mr. Jackson's co-employees that he had "passed" a polygraph test with regard to Rene Miersky's accusations; and, further, that defendant failed to publish to Ernest Jackson and his co-employees that

Rene Miersky had recanted her accusations. (Plaintiffs' Submission Regarding Motion to Remand).*

## DUTY TO PUBLICIZE RESULTS OF
## LIE DETECTOR TEST

Plaintiffs allege that defendant had a duty to advise Ernest Jackson's co-employees that he had "passed" a lie detector test regarding Rene Miersky's allegations. This court is aware of no authority nor has any been brought to its attention, which would impose such a duty on defendant. Jackson was personally advised of the polygraph results and if he believed it desirable to tell his co-employees, nothing prevented him from doing so. Defendant did not discuss any aspect of this matter with anyone other than those involved with the investigation.

Moreover, if defendant had published the matter to Ernest Jackson's co-workers, they may have risked exposure to a different kind of legal liability. Plaintiffs, on the other hand, had absolute freedom to tell anyone they chose, whatever they chose, regarding the incident. Indeed, Ernest Jackson admitted that he told fellow employees that he had "passed" the lie detector test.

## DUTY TO PUBLICIZE RECANTATION
## OF RENE MIERSKY

Plaintiff contends that defendant had a duty to inform him and his fellow employees that Rene Miersky recanted her accusations. This court can find neither facts nor legal principle to substantiate

---

* After the complaint in this action was served, Sun removed the case to the United States District Court for the Eastern District of Pennsylvania. Sun stipulated to remand based upon plaintiffs' submission regarding motion to remand.

the existence of such a duty. Plaintiffs' complaint, (paragraph 13) alleges that Mr. Kuntz had personal knowledge of Rene Miersky's confession that she had wrongly accused Mr. Jackson when she was confronted with the polygraph results. Mr. Kuntz specifically denied having personal knowledge that Rene Miersky recanted. Mr. Al Kuntz, to the contrary, claimed that he *never* met with Rene Miersky after Ernest Jackson took the lie detector test. Mr. Al Kuntz testified, at deposition, that at the 1984 meeting with plaintiff Jackson, he said: "Ern, when you passed that lie detector test and we found out the girl was lying, we gave you a clean bill of health and never held it against you ever." He further explained, ". . . when he passed the lie detector test, he was innocent and the girl was lying." Thus the conclusion of this matter from Sun and plaintiffs' points of view was entirely favorable to the latter.

However, assuming for purposes of this appeal that Rene Miersky had recanted and that Mr. Kuntz did have personal knowledge of the recantation, the issue is whether defendant had any legal obligation to tell Ernest Jackson or his fellow employees. Plaintiffs have provided no authority which would in any way support the finding of such a legal duty. Neither has this court found such. Plaintiffs complain that Jackson was branded with the proverbial "Scarlet Letter" by virtue of the aura surrounding his inside employment assignment during defendant's investigation of the incident and also because he was called into Kuntz's office on a number of occasions to discuss the alleged incident. Ernest Jackson agreed, however, that Sun acted properly in putting him on inside work during the pendency of the investigation. Ernest Jackson also admitted that he had no complaints about how Sun conducted its investigation and no complaint arising from Sun's re-

quest for him to submit to a polygraph examination. Moreover, at deposition Mr. Jackson testified that *he told* the other employees who asked him that he had passed the lie detector test. However, he also stated, "*I wanted to keep everything quiet,* because I went through enough." When asked if he "wanted to keep everything as hush-hush as you could," Jackson replied, "Yeah, because it's such an embarrassment and harassment that I took." Mr. Jackson also agreed that everything Sun had done up until the day after he took the lie detector test was reasonable and proper. Mr. Jackson was returned to outside work immediately after the polygraph test. He now contends that defendant had a duty to officially remove the "Scarlet Letter." The court is aware of no authority which suggests that defendant had a duty to publicize the results of their investigation, an investigation which plaintiffs concede was reasonable and properly conducted.

Plaintiffs further contend that defendant's conduct was outrageous and place their reliance upon section 46 Restatement Second, of Torts comment (h) c, which provides:

"Court and jury. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

It is apparent then, if such is to serve as authority, that the court, in the first instance, should determine whether defendant's conduct could reasonably be regarded as so outrageous as to permit recovery.

Restatement Second of Torts section 46, comment (d) provides the applicable standard:

"Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

A summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Pennsylvania Rule of Civil Procedure 1035; Wheeler v. Johns-Manville Corporation, 342 Pa. Super. 473, 493 A.2d 120 (1985); Ressler v. Jones Motor Company Inc., 337 Pa. Super. 602, 487 A.2d 424 (1985).

Plaintiffs in the case at bar admit that the investigation was conducted promptly, in a reasonable and appropriate matter and that the temporary removal from "outside duties" during the pendency of this investigation was in no way unreasonable. Plaintiff, Ernest Jackson, although contending that defendant had a duty to publish test results and recantation, admittedly desired to keep the incident "hush-hush."

The court has neither been presented with, nor unveiled, authority which would impose a duty on the employer. As a matter of policy, if not common sense, an employer ought not to be burdened with the obligation of disclosing the content and results of personnel investigations. Here, of course, the results of this investigation could reasonably be inferred from the employer's action returning plaintiff Jackson to his full job responsibilities. It is suggested, however, that an employer should not have to assume the responsibility of disclosing any aspect of personnel accusations, particularly where there is no publication that an accusation has been made. Even were such a principle to exist, where the employee has apparently discussed the matter with his co-workers, as is the case here, the application of the principle proposed by plaintiff appears inappropriate. Further, where plaintiff is aware of salient features resulting from his investigation by the employer and its results, and chooses not to discuss or disclose such, it is inappropriate, if not unfair, to impose a burden of disclosure upon the employer. Whether or not the employer, in the case at bar, was aware of the accuser's recantation should not alter the principle that the employee, rather than the employer, is the most obvious source of, and most realistic controller of, such personal information and the desirability or necessity of communicating such information to his co-employees. Such is best left to the affected employee.

This court determined that under the circumstances of this court applying the applicable standards of law, that defendant's conduct did not fall within the perimeter of section 46, Restatement of Torts, nor any other legal theory which would permit recovery by plaintiff for extreme and outrageous conduct. There is no duty upon the employer to

publish the results of an investigation concerning one of its employees where that employer has not previously published the accusations or the existence of an investigation.

There appearing no genuine issue as to any material fact in the case at bar, and since defendant is entitled to judgment as a matter of law, the court granted defendant's motion for summary judgment.