## Wildman v. Homa

470

C.P. of Washington County, no. 94-4933.

*Ray Radakovich,* for plaintiff.
*Doug Nolin,* for defendant.

TERPUTAC, *J.,* May 30, 1996—The plaintiff, Debra Wildman, commenced the present suit by complaint, alleging that she sustained injuries and damages as a result of a letter prepared and mailed by the defendants to the Impaired Professional Program, state board of nursing. Counsel for the plaintiff has argued that the cause of action is predicated on breach of confidentiality respecting the medical records of the plaintiff. Before the court is the motion for summary judgment by all defendants.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035. See *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 176, 533 A.2d 900, 903 (1989) (entire record before trial court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). The purpose of the summary judgment procedure is

to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial. *Curran v. Philadelphia Newspapers Inc.,* 497 Pa. 163, 439 A.2d 652 (1981). The non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ertel v. The Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996).

In determining whether to grant a motion for summary judgment the court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Larsen v. Philadelphia Newspapers Inc.,* 411 Pa. Super. 534, 602 A.2d 324 (1991); *Jefferson v. State Farm Insurance,* 380 Pa. Super. 167, 170, 551 A.2d 283, 284 (1988). However, "[b]old unsupported assertions of conclusory accusations cannot create genuine issues of material fact." *McCain v. Pennbank,* 379 Pa. Super. 313, 549 A.2d 1311 (1988). The non-moving party may not rely merely upon allegations in the pleadings, but must set forth specific facts by way of affidavit, or in some way as provided by Pa.R.C.P. 1035(b), demonstrating that a genuine issue exists. *DeWeese v. Anchor Hocking Consumer and Industrial Products Group,* 427 Pa. Super. 47, 628 A.2d 421 (1993); *Ressler v. Jones Motor Co. Inc.,* 337 Pa. Super. 602, 487 A.2d 424 (1985).

Although the court is required to view the record in the light most favorable to the plaintiff, the essential facts for disposition of the motion are undisputed. The plaintiff was hospitalized on midnight September 3, 1992, at Washington Hospital as a result of an overdose

of medication in a suicide attempt. She was admitted to the hospital at midnight and discharged the following day in the afternoon, September 4, 1992, about a day and a half. Plaintiff was transferred to Forbes Regional facility for further treatment.

At the time, Darlene Homa, one of the defendants, had been a certified registered nurse anesthetist, serving as administrative director of the department of anesthesia at the Washington Hospital. William Cline, the other individual defendant, had been the vice-president of human resources. Homa has had experience in anesthesia since 1969. At the time of the incident complained of, Homa did not know the plaintiff. At her deposition, Homa testified that as part of her employment with the hospital, she was required to review the medical records of patients who received anesthesia services at the hospital and to prepare a written report. (Deposition of Homa, pp. 15, 16.) The plaintiff's medical records indicate that plaintiff was a nurse anesthetist.

From September 3, 1992, until September 23, 1992, nothing unusual had taken place. Then on September 23, while attending a seminar for nurse anesthetists in Pittsburgh, Homa learned through conversation by some colleagues that Debra Wildman was employed in Pittsburgh as a nurse anesthetist. (Id. at 31.) After returning to her employment, Homa reported the information about the plaintiff to Cline, who is supposed to be the person at the hospital to whom such inquiries are directed. Further, Homa consulted with counsel for the hospital. Homa made a telephone call to Pearl Harris at the Impaired Professional Program, relating the background of the Wildman problem (but not mentioning Wildman's name), and then she made a second call to Harris. Finally, on October 21, 1992, having been advised both by counsel and Harris of IPP, Homa pre-

pared and mailed the letter to IPP, the subject of the instant controversy.

A few days later, Harris mailed a letter dated October 28, 1992, to Debra Wildman informing Wildman that IPP had received information that she may be in violation of the State Board of Nursing's Practice Act because of behavior arising from a mental and/or physical impairment. (Exhibit A attached to complaint.) After an investigation by IPP, its prosecuting attorney wrote to Wildman on September 29, 1993, stating that the case does not warrant formal prosecution. (Exhibit B attached to complaint.)

On September 22, 1994, the plaintiff instituted this action against the hospital, Homa, and Cline, alleging breach of confidentiality. The gravamen of the suit is that the defendants made a wrongful disclosure of confidential patient information with malice and reckless disregard of the plaintiff's rights. She seeks compensatory damages in excess of $25,000 and punitive damages in excess of $500,000.

Because the defendants' preliminary objections on the issue of cause of action had been previously overruled by this court, the plaintiff argues that the defendants should be collaterally estopped from asserting in the instant motion for summary judgment that a cause of action for breach of confidentiality cannot be pursued. Preliminary objections, however, differ significantly from summary judgment proceedings. The test for preliminary objections, which could result in a dismissal of a cause of action, is whether it is clear and free from doubt that the pleader on the facts as pleaded will be unable to prove facts legally sufficient to establish his right to relief. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992). The procedure for summary judgment, on the other hand, pierces the pleadings and as-

sesses the admissible evidence in order to see whether the need for trial exists. *Ertel, supra.* Even so, because the ruling on the preliminary objections was not a final judgment on the merits and because the defendants have not had a full and fair opportunity to litigate the questions, collateral estoppel cannot be invoked. *Balent v. City of Wilkes-Barre,* 542 Pa. 555, 669 A.2d 309 (1995).

On their part, the defendants have argued that at present Pennsylvania has not recognized a claim for breach of confidentiality. With respect to the issue before us, defendants say that the plaintiff's cause of action can only proceed under a theory of invasion of privacy, a cause which carries a one-year statute of limitations under 42 Pa.C.S. §5523(1). Thus, inasmuch as the claim can only be for invasion of privacy, the one-year limitation bars the claim, and defendants say they are entitled to summary judgment. In addition, the defendants have also raised the bar of statutory immunity, as set forth in the Professional Nursing Law and the Impaired Nurses Program, 63 P.S. §224.1(f).

In support of her position, the plaintiff contends that her cause of action is posited on breach of confidentiality, not on invasion of privacy. She points to *McKay v. Geadah,* 50 D.&C.3d 435 (C.P. Cumberland 1988) and to *Moses v. McWilliams,* 379 Pa. Super. 150, 549 A.2d 950 (1988), *alloc. denied,* 521 Pa. 539, 558 A.2d 631 (1989), asserting that the cause of action for breach of confidentiality is recognized in Pennsylvania. On the issue of statute of limitations, the plaintiff says because our statute does not otherwise provide a period for breach of confidentiality, the statute of limitations should be six years. 42 Pa.C.S. §5527. The plaintiff also contends that the defendants are not entitled to

immunity because Homa did not make the report in good faith and without malice.

## I

We will first address the bar of the statute of limitations. After reviewing the case law in this jurisdiction as well as other jurisdictions, we are persuaded that the position taken by the state courts of New York on the statute of limitations is proper. In *McDonald v. Clinger*, 146 N.Y.S.2d 801, 84 A.D. 482 (1982), the court held that the patient could bring an action against a psychiatrist, who had disclosed personal information, which he learned in the course of treatment, to the patient's wife, the cause having been grounded on breach of fiduciary duty of confidentiality. The court later held that because the cause of action enunciated in *McDonald, supra,* was a tort, it was subject to the statute of limitations for negligence. *Harley v. Druzba,* 565 N.Y.S.2d 278, 169 A.D. 1001 (1991). Under the circumstances, we believe a cause of action for breach of confidentiality should be subject to the two-year statute of limitations as provided in 42 Pa.C.S. §5524. Because plaintiff's complaint was filed within two years of the date she was provided with Homa's identity as the author of the letter, the claim is not barred by the statute of limitations.

## II

Next, we address the cause of action asserted in this case. Although some jurisdictions have recognized a cause of action for breach of professional confidence between physician and patient, as pointed out above, our appellate courts have not. Nor have they stated a cause of action does not exist.

In *McKay, supra,* the trial court held that a cause of action for breach of confidentiality would lie against a former treating physician. There the treating physician had displayed photographs and disclosed information about his treating the plaintiff. The disclosure was made during a career orientation program. We believe that *McKay* presents a problem distinguishable from the instant suit, for in that case the physician provided information and displayed photographs regarding his private treatment of a patient, and the information was provided under circumstances which appear to indicate some breach of privacy or of confidentiality.

On the appellate level, the only case discussing breach of confidentiality is *Moses, supra.* There the plaintiff alleged that her physician breached the patient's confidentiality by engaging in ex parte discussions before trial with a medical malpractice attorney and by offering his testimony at trial. The difference from the instant suit is that in *Moses* the information had been divulged from the plaintiff's medical records in the context of a medical malpractice suit brought by the plaintiff against the physician. Nevertheless, the majority of the Superior Court declined to establish a cause of action for breach of confidentiality.

Although the courts in *McKay, Moses,* and the instant case have been asked to address the issue of unauthorized release of medical information obtained in the course of the patient-physician relationship to third parties in terms of a cause of action for breach of confidentiality or invasion of privacy, it would appear that the traditional medical malpractice cause of action would provide the plaintiffs with an adequate remedy. Should the appellate courts have an opportunity to revisit the issue, it is suggested that the concurring opinion of Justice Presiding Simons in *McDonald, supra,* be

considered before creating a cause of action for breach of confidentiality in the patient-physician context.

## III

Assuming, without deciding, that a cause of action may exist for breach of confidentiality, we are firmly of the opinion that in the context of the instant record the claim of the plaintiff is barred by statutory immunity. The Impaired Professional Program, contained in 63 P.S. §224.1, provides as follows:

"(f) Any hospital or health care facility, peer or colleague who has substantial evidence that a nurse has an active addictive disease for which the professional is not receiving treatment, is diverting a controlled substance or is mentally or physically incompetent to carry out the duties of his license shall make or cause to be made a report to the [State Board of Nursing] . . . . Any person or facility who reports pursuant to this section in good faith and without malice shall be immune from any civil or criminal liability rising from such report. Failure to provide such report within a reasonable time from receipt of knowledge of impairment shall subject the person or facility to a fine not to exceed $1,000. The Act of May 22, 1951, P.L. 310, as amended, P.L. 1985 409, no. 109, §12.

Uncontradicted is the testimony that the defendants reported the overdose problem under the authority of the Impaired Professional Program. The statute mandates that a hospital or peer *shall make or cause to be made* a report to the state board. What had taken place was not an event by which Homa was looking for improper conduct by the plaintiff; Homa was not rummaging through the plaintiff's medical records looking for some misdeed; Homa did not even know the plaintiff. Rather than firing off a letter to plaintiff's

employer or to IPP, Homa acted in the manner that any responsible person should act: She consulted with Cline, who was in charge of these matters for the hospital, and with legal counsel for the hospital. She made a discreet inquiry by telephoning IPP and talking with Pearl Harris, but without mentioning plaintiff's name. Only after assuring herself that reporting the incident was mandatory did Homa write the reporting letter to IPP.

Despite these uncontradicted facts, the plaintiff contends that defendant acted with malice. Though not defined in the statute, the term "malice" is sometimes defined as the conduct of one realizing the statement is false or making a statement in reckless disregard of the truth or falsity of it. *Frisk v. The News Company,* 361 Pa. Super. 536, 523 A.2d 347 (1986). It may refer to explained distortions of the truth or to the failure to follow established procedures to find the truth. *Coleman v. Philadelphia Newspapers Inc.,* 391 Pa. Super. 61, 570 A.2d 552 (1990).

In her response to the defendants' request for admissions on lack of good faith and on malice, the plaintiff attached a statement reciting that both Homa and Cline acted with malice. (Attachment to answers to request for admissions.) For one thing, the plaintiff alleges that the conduct of Homa reviewing the confidential medical records was improper because Homa was not a treating nurse and had no need to review the entire record. Second, the plaintiff says Homa did not consult with her own superior, Anthony Zelenka, but instead went to Cline, who was in charge of human resources. Third, she says Homa and Cline gave false information to Pearl Harris at IPP to the effect that the plaintiff was practicing her profession at Presbyterian University Hospital after being told not to practice by Washington

Hospital. Fourth, the plaintiff asserts that Homa should have consulted with plaintiff's several treating physicians at Washington Hospital before making the report. Fifth, she says malice is shown because Homa did not consult with Forbes regional facility where she had been transferred. Sixth, she says Homa should have consulted with plaintiff's employer at Presbyterian University Hospital. Finally, she points to a remark allegedly made by Susan Groskin, a professional conduct investigator, who said these "people" (meaning the defendants) have gone out of their way to report Wildman.

Referring to the allegations that Homa acted with malice because she had not been the treating nurse for the plaintiff and had initially made an oral report to Cline rather than to her own supervisor, we note that the statute makes no such requirements. Any mandate restricting the duty of reporting to a treating nurse would certainly frustrate the purpose of the statute. Moreover, the plaintiff has not shown any common-law or statutory requirement that Homa's own supervisor must have been informed at the outset. Likewise, the statute does not provide any insistence that an attending physician must be informed. We particularly note the dilemma created by plaintiff's allegation that her employer should have been informed: Not reporting is actionable and reporting a matter of this gravity is highly likely to be actionable.

Taken singly or together, the contentions advanced by the plaintiff do not amount to a report promulgated in bad faith or with malice. The actions taken by the defendants show careful and deliberate reflection on a sensitive issue important to the plaintiff. If the court were to allow the instant suit to proceed, then every person subject to the statute would act at his or her peril, either to report the information and subject oneself

to a lawsuit or not report and subject oneself to a statutory penalty. Further, we are loathe to permit the instant cause of action based on the record before us to proceed, thus condoning a situation where the reported professional may ignore the statute with impunity. It seems to us that the legislature has wisely determined that reports to IPP are solidly based on protection not only for the public but also for the professional who may be in need of help. Rights of privacy and of confidentiality do not lend themselves to purity of action and to perfect resolution. As we attempt to resolve the interests of professionals and of persons and facilities required to submit reports reasonably grounded on evidence of addiction or mental or physical incompetency, the court must balance the competing interests in order to arrive at a reasonable and just decision.

Under the circumstances here presented, the court finds that the defendants acted in good faith and without malice, and therefore they are entitled to statutory immunity. Inasmuch as Homa was charged with breach of confidentiality as an employee of the hospital and Cline was also an employee who merely received the information, summary judgment will be entered in favor of all three defendants.

## ORDER

And now, May 30, 1996, the motion for summary judgment by the defendants, Darlene Homa, William Cline, and Washington Hospital, is granted.

Upon praecipe, the prothonotary shall enter judgment in favor of the defendants and against the plaintiff, Debra Wildman.