# Watson v. Prestige Delivery Sys., Inc.

450

*Margaret Fried* and *Evalynn Welling*, for plaintiffs.

*A. Patricia Diulus-Myers*, for defendant Prestige Delivery Systems, Inc.

*Stephen L. Korbel* and *Christopher M. Helms*, for defendants NICA, Inc. and Thomas McGrath.

WETTICK, *J.*, February 7, 2013—This is a class action brought by two truck drivers (Richard Watson and David Clary) who delivered packages to customers of Prestige Delivery Systems, Inc. ("Prestige"). Each driver performed his services pursuant to an agreement between Prestige and the driver titled *Independent Contractor Operating Agreement* ("Agreement"). See Plaintiffs' fourth amended complaint, Ex. A. This Agreement refers to the driver as an independent contractor and not an employee of Prestige.

The Agreement provides that the contractor must

be an affiliate of the National Independent Contractor Association, NICA, Inc. ("NICA"). The Agreement describes NICA as a primary provider of third-party administrative services to independent contractors, which manages and administers settlement, tax, and other related services for independent contractors who are affiliates of its organization. This agreement provides that payments to the truck driver for services rendered to Prestige will be made by NICA (Agreement, ¶6). It provides for NICA to make deductions-described in an Agreement between NICA and the driver-from compensation Prestige owes the driver for delivering packages to customers of Prestige.[1]

The gravamen of Plaintiffs' Fourth Amended Complaint is that defendants have misclassified plaintiffs and other similarly situated drivers as independent contractors rather than as Prestige's employees, thereby depriving these drivers of the rights, privileges, and benefits owed to them as employees.

Prestige, NICA, and Thomas McGrath have filed preliminary objections to Plaintiffs' Fourth Amended

---

1. In an October 23, 2007 letter sent in conjunction with unemployment compensation proceedings, NICA (as Prestige's designated representative) described David Clary's relationship with Prestige and NICA as follows:

On or about August 10, 2007, the claimant began performing delivery services on Prestige's behalf, Prior to performing services, the claimant executed several documents acknowledging his independent contractor status including an independent Contractor Operating Agreement and Independent Contractor Acknowledgment attached hereto. Additionally, the claimant joined NICA, Inc. ("NICA") by completing an Independent Contractor Application and Agreement. NICA offers services to its affiliated independent contractors, including occupational accident insurance, tax services, access to disability insurance, a tax escrow program, and assistance with the independent contractor's business advertising.

Complaint.[2]

## PRELIMINARY OBJECTIONS BASED ON FORUM SELECTION CLAUSE

The initial issue that I must address is whether plaintiffs' claims against Prestige must be brought in Ohio.

### The Agreement

Prestige relies on ¶22 of the independent contractor operating agreement:

22. Entire Agreement. This Agreement constitutes the entire agreement and understanding between the parties and supersedes all prior independent Contractor Operating Agreements and shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties. In the event any provision of this Agreement shall be held invalid or unenforceable for any reason whatsoever, the invalidity or unenforceability shall not affect any other provision of this Agreement, and the remaining provisions shall remain in full force and effect. This Agreement shall be deemed to have been written in accordance with the statutes and laws of the State of Ohio, and, in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state. In addition, Contractor and Carrier agree that this Agreement is being entered into in the State of Ohio.

### Pennsylvania Case Law

---

2. Mr. McGrath is identified in Plaintiffs' Fourth Amended Complaint as the president, vice president, treasurer, director, CEO, and 100% shareholder of NICA. He founded NICA in approximately 1993.

The law governing the enforceability of a forum selection clause is set forth in the recent opinion of the Pennsylvania Superior Court in *Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1215 (Pa. Super. 2010). This opinion looked to a 1965 opinion of the Pennsylvania Supreme Court:

In *Central Contracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810, 816 (1965), our Supreme Court addressed the effect and enforceability of contractual forum selection clauses in Pennsylvania.

The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation. Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement. Moreover, the party seeking to obviate the agreement has the burden of proving its unreasonableness.

*Id.* at 816.

*Autochoice* also discussed more recent case law:

Recently, this court has clarified the circumstances under which such provisions would be deemed unenforceable.

In light of these controlling principles from *Central Contracting* and prevailing case law, a forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy.

*Patriot Commercial*, supra at 651. See also *O'Hara v. First Liberty Insurance Corp.*, 984 A.2d 938 (Pa. Super.2009), *appeal denied*, 995 A.2d 354 (Pa.2010).

*Id.* (Footnote omitted).

## Not a Bargained-for Clause

The Pennsylvania case law described above does not provide for Pennsylvania courts to enforce a forum selection clause buried in a take-it-or-leave-it form agreement drafted by the party seeking to enforce the clause.[3]

---

3. As the Pennsylvania General Assembly has recognized, the "'freedom of contract' as applied to [employees'] relations with their employers is illusory," given the level of inequality in bargaining among

In *Central Contracting Co.*, 209 A.2d at 816, quoted at length by the *Autochoice* Court, the Court referred to the "modern and correct rule" that the forum selection clause should be recognized "when the parties have freely agreed that the litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation."

A court, applying this criteria, should not enforce this forum selection clause because plaintiffs did not freely agree for litigation to be conducted in Ohio. The forum selection clause was buried in ¶22 of the Agreement under the unrelated heading, *Entire Agreement*; in all likelihood, the drivers were not aware of the forum selection clause. Also, even if aware of the clause and what it means, the drivers would not believe that they had any choice over whether their Agreement with Prestige would ultimately include a forum selection clause.

This application of *Central Contracting Co.* is consistent with the language in *Patriot Commercial*, also quoted by the *Autochoice* Court, that the forum selection clause is presumptively valid "in a commercial contract between business entities." *Autochoice*, 9 A.3d at 1215 (quoting *Patriot Commercial Leasing Co. v. Kremer Restaurant Enter, LLC.*, 915 A.2d 647, 651 (Pa. Super. 2006)).

Against Public Policy

Also, the Pennsylvania courts shall not enforce a forum selection clause that was unreasonable at the time of litigation or violated public policy (see *Autochoice* at

them. 43 P.S § 333.101.

pages 3-4 of this opinion, quoting *Central Contracting* and *Patriot Commercial*).

This lawsuit is based on allegations that defendants failed to comply with Pennsylvania laws protecting wage earners. These laws specifically state that their protections cannot be avoided. Wage Payment and Collection Law, 43 P.S. § 260.7 (no provision shall be contravened by a private agreement), and Pennsylvania Minimum Wage Act, 43 P.S. § 333.113 (agreement between employer and employee to work for less than minimum wage is no defense in an action for damages).

These anti-waiver provisions should be viewed as reaching any contractual provisions that interfere with enforcement of the legislation. Thus, the Pennsylvania courts shall not enforce any provisions in an agreement drafted by an employer that make it more difficult for workers to enforce their statutory rights. In this case, the legislative goal of securing prompt payment of wages is thwarted if a worker must sue in Ohio rather than commencing an action before the local Magisterial District Court.[4]

In summary, the question of whether to enforce Prestige's forum selection clause is for the Pennsylvania courts to decide. Federal law does not impose any restrictions on the Pennsylvania courts.[5] There is no reason why the

---

4. The availability of proceedings in a Magisterial District Court allows a worker, without the assistance of counsel, to bring a lawsuit with very relaxed pleadings and with service by mail in a court located in the vicinity of the worker's place of employment/residence and to obtain a hearing within twelve to sixty days of the institution of the suit.

5. The enforceability of arbitration clauses, on the other hand, is

Pennsylvania courts would allow any party to select the courts of another state to decide claims of Pennsylvania workers based on Pennsylvania legislation enacted to protect these workers.

### Outside Scope of Forum Selection Clause

Finally, in this case, plaintiffs' recovery is not dependent upon the provisions of its agreement with Prestige. To the contrary, it is plaintiffs' contention that regardless of what the agreement states, as a matter of public policy, plaintiffs are entitled to payments as provided for in the Wage Payment and Collection Law and the Minimum Wage Act. Consequently, this lawsuit does not involve any "disagreement or litigation" over the terms of the parties' Agreement.

### PRELIMINARY OBJECTIONS OF PRESTIGE AND NICA TO COUNT II-CLAIMS BASED ON THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW (43 P.S. §§ 260.1 *et seq.*)

The Wage Payment and Collection Law provides a statutory remedy to employees who have not received wages and other benefits that are otherwise due. 43 P.S. § 260.9a; see *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 574 (Pa. Super. 2006). Thus, plaintiffs must establish that they are employees, rather than independent contractors, in order to raise claims based on alleged violations of the Wage Payment and Collection Law.

The factual allegations in Plaintiffs' Fourth Amended

---

governed by the Federal Arbitration Act.

Complaint supporting plaintiffs' contention that they are employees are very similar to Findings of Fact Nos. 1-15 made by the Unemployment Compensation Board of Review in its Decision and Order, No. B-469459-A (Oct. 20, 2009), in unemployment compensation proceedings initiated by David Clary.[6] See Exhibit D to Plaintiffs' Fourth Amended Complaint:

FINDINGS OF FACT:

1. The claimant was last employed as a delivery driver by the Prestige Delivery Systems from August 10, 2007, at a final rate of $50.00 a day. The claimant is currently still employed.

2. The claimant was required to complete pre-employment screening as a condition of employment.

3. The employer did a background check and a driver's license check.

4. The claimant was hired to deliver packages to clients of the employers.

5. The claimant was given specific instructions on what clients are to be serviced by the claimant and at what time packages must be picked up and delivered.

6. The claimant was required to wear the uniform of the company.

---

6. I am not suggesting that rulings made in court proceedings involving unemployment compensation claims govern this litigation. I am referring to these Findings of Fact only because they succinctly describe the allegations in Plaintiffs' Fourth Amended Complaint.

7. The claimant also had to provide a pager and, when customer requirements dictated, a two way radio and/or cellular phone.

8. The claimant used his own personal vehicle to make the deliveries.

9. The claimant had an agreement with the employer to work as an independent contractor for the employer.

10. The employer has the right to assert control over and responsibility for the equipment used by the claimant to comply with federal and state regulations.

11. The contract also states that the claimant must conform with and meet the standards and approval of the employer's customers.

12. The claimant had to wait to accept the position from the employer to make deliveries in accordance with the employer's instructions.

13. The claimant had to call if he was running more than 10 minutes late.

14. The claimant was required to complete a manifest for the employer at the completion of his route.

15. The claimant could not contact the employer's customers directly.

These allegations, if established, will support a finding that plaintiffs were employees.

Plaintiffs' claims under the Wage Payment and Collection Law are based on *deductions*, described below,

made from the money owed plaintiffs for their deliveries. Plaintiffs' claims are based on allegations that both Prestige and NICA were involved in a scheme in which improper deductions were made from plaintiffs' wages.

Under 43 P.S. § 260.3(a), an employer must pay all wages that are due less any "deductions...as authorized by regulation of the Department of Labor and Industry for the convenience of the employe...."

The relevant regulations promulgated pursuant to 43 P.S. § 260.3(a) read as follows:

> The following deductions from wages are authorized for the convenience of employes in accordance with the provisions of section 3 of the Wage Payment and Collection Law (43 P.S. § 260.3).
>
> . . .
>
> (11) Deductions for purchases or replacements by the employe from the employer of goods, wares, merchandise, services, facilities, rent or similar items provided such deductions are authorized by the employe in writing or are authorized in a collective bargaining agreement.
>
> (12) Deductions for purchases by the employe for his convenience of goods, wares, merchandise, services, facilities, rent or similar items from third parties not owned, affiliated or controlled directly or indirectly by the employer if the employe authorizes such deductions in writing.

34 Pa. Code §9.1.

### NICA'S Argument

At pages 6-8 of the NICA Brief in Support of Preliminary Objections to the Fourth Amended Class Action Complaint, NICA raised the following argument in support of its preliminary objections seeking dismissal of Count II:

Despite Plaintiffs' contention, and even if Plaintiffs were employees of NICA or McGrath, which is specifically denied, both Plaintiffs authorized in writing the deductions of which they now complain. Specifically, Watson authorized NICA to make the above-referenced deductions in Paragraph 7 of the Independent Contractor Operating Agreement ("ICOA") that he entered into with Prestige on or about February 20, 2008. *See*, Ex. A to the Fourth Amended Complaint. Paragraph 7 of the ICOA provides that:

....[Watson] hereby authorizes a deduction from the compensation paid to [Watson] in the amount of $20.50 per week [] which amount represents a fee for providing and maintaining electronic communication devices, including pagers and/or radios and/or cellular phones, providing uniforms as specified in section 15 below, providing intrastate annual tax receipts and single state registration, and for administrative services related to [Watson's] engagement, all for use by [Watson] under the [ICOA].

Clary authorized NICA to make the above-referenced deductions in Paragraph 2 of NICA's Independent

Contractor Application and Agreement ("ICAA") that he entered into with NICA on or about August 10, 2007. *See,* Ex. B to the Fourth Amended Complaint. The relevant provisions of Paragraph 2 of the ICAA provide that:

2. NICA Affiliation Fees:

\* \* \*

b. Drivers: If the IC operates a vehicle less than 18 ft, the IC agrees to pay NICA an affiliation fee of $23.95 per week (with reduced fees for ICs earning less than $400.00 per week in gross commissions) or $47.80 bi-weekly or $51.69 semi-monthly, as dictated by the CC's settlement period, plus an initial account setup fee/ application fee of $25.00. If the IC operates a straight truck over 18 ft, the IC agrees to pay an affiliation fee of $3.95 per week (reduced fees available). If the IC operates a tractor-trailer, the IC agrees to pay an affiliation fee of $41.25 per week.

c. The IC agrees to have these fees deducted from his/her settlement check. If the IC does not perform services, no fees are due and no coverage is in place. Non-payment of the aforementioned fees constitutes inadequate grounds for cancellation of all benefits and services to which the IC is entitled as an affiliate. IC also agrees to have additional fees, if any, generated from the cost of doing business with a CC or independently, deducted from his/her settlement check. These fees may include but are not limited to applicable rental fees for communication devices or equipment uniforms and vehicles.

According to NICA, these above deductions, authorized by plaintiffs, are authorized in Section 9.1(11) of the regulations. Thus, Count II of the Fourth Amended Complaint must be dismissed.

## Plaintiffs' Argument

Plaintiffs contend that defendants cannot prevail simply by showing that the deductions which are subject to 34 Pa. code 9.1(11) and (12) were authorized by the employee in writing. There is a second requirement that these deductions are "for the convenience of [the employe]."

Plaintiffs correctly state that I must overrule defendants' preliminary objections to Count II if there is a second requirement that the deductions be for the "convenience of employees" because allegations in the Fourth Amended Complaint describe the deductions that were not for the convenience of plaintiffs. For example, ¶15 of the Prestige agreement with plaintiffs requires all delivery personnel to supply and wear a uniform identifying the carrier and invest in a pager, and, when customer requirements dictate, a two-way radio and/or cellular phone. Deductions for uniforms and communication devices are not for the convenience of the employee but, rather, are for the benefit of Prestige whose customers require that drivers wear uniforms and carry pagers or cell phones.

There is support for defendants' argument that the deductions coming within Section 9.1(11) are permitted without any consideration of whether they are for the convenience of the employee.

Section 9.1(11) does not include a clause that limits

deductions for purchases or replacements from the employer "for the convenience of the employee" while Section 9.1(12) specifically limits deductions for purchases from third parties to "purchases by that employe for his convenience."

It is a well-recognized rule of construction that the inclusion of "for his convenience" in Section 9.1(12) and its exclusion in Section 9.1(11) indicates that the Regulations intended to allow any deductions authorized by the employee in writing where the purchases or replacements were from the employer.

However, there are other rules of construction that support a reading of Section 9.1(11) as covering only deductions for purchases or replacements that are for the convenience of the employee.

First, the introductory paragraph of Regulation Section 9.1 refers to deductions from wages "authorized for the convenience of employes." In deciding whether this clause is part of Section 9.1(11), I look to the case law which provides that, if possible, a regulation shall be construed in a manner consistent with the purpose of the underlying statute. *Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 983 A.2d 1231, 1241 (Pa. 2009); *Berkovich v. Com. Dept. of Pub. Welfare*, 452 A.2d 896, 898 n.3 (Pa. Cmwlth. 1982); and *Dolan v. Bd. of Finance & Revenue*, 333 A.2d 219, 221 (Pa. Cmwlth. 1975).

The purpose of the Wage Payment and Collection Law is to protect employees from economic coercion. See *Ressler v. Jones Motor Co.*, 487 A.2d 424, 428-29 (Pa.

Super. 1985). Consequently, the Department of Labor and Industry, in enacting regulations authorizing deductions "for the convenience of employes," would not have intended to give employers a free pass as long as the job-seeking worker would sign a piece of paper authorizing a deduction. Under defendants' reading of No. 11, the employer (with the employee's written authorization) could make deductions for the purchase by the employee of specific safety equipment required on the job, the purchase of tuxedos for parking attendants, maintenance fees for the employer's equipment (e.g., vehicles) which the employee uses, or the payment of damages to company equipment.

If I read Regulation Section 9.1(11) in the manner that defendants propose, I would reach a result the Department of Labor and Industry could not have intended: that an employer may deduct from the employee's wages the cost of work uniforms purchased from the employer, but the employer cannot make similar deductions if the employer directs the employee to purchase the uniforms from a third party.

In sum, for the reasons stated above, I am certain that the Department of Labor, in promulgating regulations to further the policies and objectives of the Wage Payment and Collection Law, did not intend to authorize deductions for purchases or replacements made by the employee from the employer that were for the convenience of the employer and not for the convenience of the employee.

For these reasons, I overrule defendants' preliminary objections to Count II of Plaintiffs' Fourth Amended

466

Complaint.

## PRELIMINARY OBJECTIONS OF PRESTIGE AND NICA TO COUNT IV-FRAUDULENT MISREPRESENTATION

Defendants seek dismissal on the grounds that plaintiffs have failed to identify any specific misrepresentations, plaintiffs have failed to adequately allege the manner in which they detrimentally relied on the representations, and plaintiffs have failed to plead damages.

I am overruling these preliminary objections. Plaintiffs base their fraudulent misrepresentation claims on the contents of their Agreements with Prestige and NICA; according to plaintiffs, these Agreements fraudulently misrepresented the relationship between plaintiffs and Prestige. Plaintiffs allege that they relied on this description of their relationship with Prestige and NICA and made payments that should have been made by the employer, including workers' compensation and FICA payments.

## PRELIMINARY OBJECTIONS OF PRESTIGE AND NICA TO COUNT V-CIVIL CONSPIRACY

To state a claim for civil conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuit of the common purpose; and (3) actual damage. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000).

Plaintiffs' allegations support a civil conspiracy claim as

to Prestige and NICA. Plaintiffs' allegations, if established, support a finding that Prestige and NICA were participants in a scheme through which plaintiffs and others similarly situated were instructed to make FICA payments, payments for workers' compensation benefits, and other payments that were the responsibility of Prestige.[7]

## PRELIMINARY OBJECTIONS OF PRESTIGE AND NICA TO COUNT VI-UNJUST ENRICHMENT

Prestige contends that this count must be dismissed because the parties' relationship is governed by a written contract. I disagree.

Plaintiffs' unjust enrichment claim is based on their contention that the relationship is governed by employment law rather than writings that do not accurately describe the relationship between plaintiffs and Prestige. The Complaint describes how Prestige has been unjustly enriched through plaintiffs' payments that were the responsibility of Prestige.

I am overruling NICA's preliminary objections seeking dismissal of this count because plaintiffs may be seeking disgorgement of payments made as part of an illegal enterprise.

## PRELIMINARY OBJECTIONS OF PRESTIGE AND NICA TO COUNT I—EQUITABLE RELIEF

I am dismissing this count. Named plaintiffs are no

---

7. While NICA correctly states that an agent of a corporation cannot conspire with the corporation of which it is an agent, the factual allegations in Plaintiffs' Fourth Amended Complaint do not require a finding that NICA's participation was solely as an agent of Prestige.

longer employed by Prestige and are not likely to be employees in the future.

Declaratory relief is unnecessary because if plaintiffs can establish that defendants' practices are unlawful, they will be fully compensated for these unlawful acts.

## PRELIMINARY OBJECTIONS OF NICA TO COUNT III—PENNSYLVANIA MINIMUM WAGE ACT (43 P.S. §§ 333.102 *et seq.*)[8]

The Minimum Wage Act permits civil actions to be brought against an employer who has paid less than the minimum wage. 43 P.S. § 333.113. The term *employer* is broadly defined to include any person or entity acting "directly or indirectly, in the interest of an employer in relation to any employe." 43 P.S. § 333.103.

Plaintiffs have alleged that NICA and Prestige are parties to a scheme in which NICA will act in the interests of Prestige in relation to plaintiffs by assisting Prestige in mischaracterizing an employer-employee relationship as a relationship in which the workers are independent contractors. While NICA contends that the allegations within the complaint establish at most that NICA was a third party that provided various administrative services to both Prestige and plaintiffs, plaintiffs' allegations support a finding that NICA was a knowing participant in the scheme to deny plaintiffs the minimum wages required under the Minimum Wage Law. Its participation in this scheme brings NICA within the scope of the Minimum Wage Act.

---

8. Prestige did not file preliminary objections to Count III.

Thus, I overrule defendant's preliminary objections to Count III.

## PRELIMINARY OBJECTIONS OF THOMAS McGRATH

I next consider the preliminary objections of Mr. McGrath. He contends that in his dealings with Prestige and the truck drivers making Prestige's deliveries, he was acting in his corporate capacity. Consequently, he is not individually liable for the acts of NICA.

Plaintiffs seek to hold Mr. McGrath liable on any causes of action under which NICA is liable. Plaintiffs base their claim against Mr. McGrath on the following allegations in their Fourth Amended Complaint:

Mr. McGrath founded NICA in 1993; he is its CEO, President, and 100% shareholder; and he exercises near control over the affairs of NICA.[9]

Plaintiffs contend that the Fourth Amended Complaint contains sufficient factual allegations to support a piercing of the corporate veil. I disagree. I am sustaining Mr. McGrath's preliminary objections as to claims based on piercing the corporate veil because case law does not permit the corporate veil to be pierced on a showing that a corporation is owned and operated by a single person coupled with general allegations that the corporation is a shell. *Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87,

---

9. These allegations are consistent with McGrath's deposition testimony taken in *Dillon v. NICA, Inc. and Thomas M. McGrath, et al.*, Civil Action No. 07N0067, Circuit Court for Putnam County, Tennessee.

95 (Pa. Super. 2007).

I reach a different result with respect to plaintiffs' claims that Mr. McGrath is liable for the actions of NICA because of his individual participation. Under Pennsylvania case law, the participation theory imposes liability for participation in tortious activities. The participation theory has nothing to do with whether the corporation is or is not a sham. Liability is imposed against individuals who participated in the tortious acts committed on behalf of the corporation. "Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity." *Wicks v. Milzoco Builders Inc.*, 470 A.2d 86, 90 (Pa. 1983).

Plaintiffs' allegations that Mr. McGrath exercises near control over the affairs of NICA supports recovery against Mr. McGrath based on his active participation.

Mr. McGrath also seeks dismissal on the ground of a lack of jurisdiction over his person. However, the allegations that support recovery under the participation theory support a finding that this court may exercise jurisdiction over Mr. McGrath for his participation in this scheme to mischaracterize the status of plaintiffs and other drivers.

For these reasons, I enter the following Order of Court:

## ORDER OF THE COURT

On this February 7, 2013, upon consideration of

defendants' preliminary objections, it is ordered that Count I is dismissed, and claims based on piercing the corporate veil are dismissed.