622 A.2d 983

**Joseph B. ATKINSON, Jr., Appellant,**

v.

**Daniel M. HAUG, John T. Acton and John T. Acton, P.C.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1993.

Filed April 2, 1993.

408

Edward H. Fackenthal, Norristown, for appellant.

Arthur W. Lefco, Philadelphia, for Acton, appellees.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

410

TAMILIA, Judge:

In the spring of 1984, appellant, Joseph B. Atkinson, Jr., became partners in an apartment complex known as Kingsbury with his friend and business associate, appellee, Daniel M. Haug, an associate attorney in appellee John T. Acton's law firm, John T. Acton, P.C. (hereinafter, collectively, Acton). When the investment failed, in an attempt to recover his financial loss, appellant brought suit for misrepresentation and professional negligence against the appellees alleging Haug's allegedly faulty business advice was offered within the scope of his employment thereby making Acton vicariously liable. The court rejected this argument when, on June 24, 1992, it granted summary judgment in favor of John T. Acton and John T. Acton, P.C.[1] Atkinson appeals from this Order and argues the court erred by finding, as a matter of law, Haug was acting outside his scope of employment so as to preclude Acton's vicarious liability.

As an appellate court we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 104, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts relevant to the issues in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Larsen v. Philadelphia Newspapers Inc.*, 411 Pa.Super. 534, 602 A.2d 324 (1991); *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusions no genuine issue of material fact exists

1. The motion for summary judgment was made by John T. Acton and John T. Acton, P.C., and did not include defendant, Daniel Haug. Moreover, although he is listed as an appellee in this appeal, Haug has not filed a brief.

and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035. *See Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before trial court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). A non-moving party may not rely merely upon controverted allegations in the pleadings, but must set forth specific facts by way of affidavit, or in some other way as provided by Pa.R.C.P. 1035(b), demonstrating that a genuine issue exists. *Ressler v. Jones Motor Co.,* 337 Pa.Super. 602, 487 A.2d 424 (1985). The court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in pleadings that are uncontroverted. *Overly v. Kass,* 382 Pa.Super. 108, 554 A.2d 970 (1989). Nonetheless, the mere fact that a party fails to submit counter-affidavits does not automatically render summary judgment appropriate; it is preliminarily imperative that the moving party's evidence clearly dispel the existence of any genuine factual issue. *Knecht v. Citizens & Northern Bank,* 364 Pa.Super. 370, 528 A.2d 203 (1987). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

▮▮▮ Before a defendant law firm can be held liable for the tortious or negligent conduct of one of its attorneys, it must be established the attorney/employee was acting within the scope of his employment or apparent authority. Moreover, where an agent acts in his own interest and commits a fraud for his own benefit in a matter which is beyond the scope of his employment, the principal who has received no benefit therefrom will not be held liable for the agent's tortious act. *Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 499 A.2d 282 (1985). Attorney malpractice claims, whether civil or criminal, bear the traditional elements of a general claim of negligence—duty, breach, causation and damages. *Bailey v. Tucker,* —— Pa. ——, 621 A.2d 108 (1993). Absent

an express contract, an implied attorney/client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him. *Sheinkopf v. Stone,* 927 F.2d 1259 (1st Cir.1991). Apparent authority will be found where the principal, by words or conduct, leads people with whom the alleged agent deals to believe the principal has granted the agent the authority he purports to exercise. *Joyner v. Harleysville Ins. Co.,* 393 Pa.Super. 386, 574 A.2d 664 (1990). In Pennsylvania, apparent authority flows from the conduct of the principal and not that of the agent. *D & G Equipment Co., Inc. v. First National Bank of Greencastle, Pa.,* 764 F.2d 950 (3rd Cir. 1985).

Acton's liability turns on the relationship between appellant and Haug. Accordingly, the key issue in this case is whether there was an attorney/client relationship between appellant and Haug or, in the alternative, the men were merely partners in an unfortunate business enterprise. We find the record, when read in its entirety, supports the truth of the latter averment and, therefore, affirm the Order granting summary judgment in favor of Acton.

Haug, an attorney employed by Acton, dabbled in real estate investments in addition to pursuing his legal career. Appellant is a college graduate and owner and president of Atkinson Freight Lines, Inc., a cargo transportation business employing approximately ninety persons. The men met socially, through a mutual friend, in 1982 and they and their wives quickly became good friends. Between 1982 and 1984 Haug admittedly handled, pro bono, a few personal legal problems for appellant. Appellant became aware of the Kingsbury venture in late 1983 when he bumped into Haug and a mutual friend who were having lunch and discussing the project. Once appellant expressed his interest, Haug explained the Kingsbury venture and appellant decided to become a one-sixth partner. Appellant testified it was his

understanding he would co-sign a note for the down-payment needed to purchase the development, but his loss would be limited to a forfeiture of the real estate should the project fail. (Atkinson deposition, 8/11/88, pp. 32–34.) Appellant further believed each of the partners would net $80–$85,000 within one year, while incurring no personal liability. (*Id.*, p. 36.) Atkinson testified when he agreed to become a Kingsbury partner he did so with the knowledge profitability would be dependent upon the ability to construct and sell the condominiums within the price range and time frame anticipated in the prospectus, yet chose not to review the project prospectus (cash review analysis) prior to executing the loan documents and relied instead on Haug's legal expertise and another partner's accounting experience. (*Id.*, pp. 47, 48, 50, 52–53.)

On the morning of the April 27, 1984 closing, a surety agreement was messengered to Atkinson's home for his and his wife's signatures. (*Id.*, pp. 67–68.) Although appellant questioned his wife's involvement which heretofore had been nil, the Atkinsons signed without reading "some kind of loan form" for $185,000, aware they would be personally liable for one-sixth of the amount. (*Id.*, pp. 68–71.) Appellant also testified that while driving to the closing he "speed-read" the partnership agreement before signing it. (*Id.*, pp. 60–61.) When he and Haug arrived at the closing, four hours late, appellant testified he signed, while leaning up against a wall, a $2,840,000 note, the terms and amount of which he was unaware at the time. (*Id.*, pp. 64–66.) Appellant testified he also signed, without reading, an indemnity agreement in favor of one of the partner's wives. (*Id.*, pp. 86, 89.) Sometime after the closing, appellant offered to and did personally borrow an additional $85,000, secured by Atkinson Freight Lines, to cover a bad check written by one of the partners. (*Id.*, pp. 83, 89–90.) It was appellant's testimony he had read the indemnity agreement executed to protect this $85,000 loan. (*Id.*, p. 89.) Atkinson testified he never asked Haug for advice and never was billed for nor offered to pay for the legal services allegedly performed by Haug. (*Id.*, pp. 94, 95, 100.)

Looking at the totality of the circumstances, based on objective evidence presented and anticipated reasonable conduct of the parties, we find the appellant has failed to establish an attorney/client relationship with Haug. To the contrary, appellant's testimony only established the predicament in which he now finds himself is the result of his own carelessness. Moreover, there is no indication Haug was acting with apparent authority from Acton.[2] Accordingly, Acton cannot be held vicariously liable for Haug's actions. The record reveals the appellant is an educated man, knowledgeable and seasoned in the business world and owner and president of a successful cargo transportation business. Prior to the Kingsbury venture, appellant had borrowed money for his personal investments and, impliedly, had knowledge of the paperwork required and its legal significance. A reasonable, sophisticated business person would not sign document after document, imputing financial liability, without reading them. Nor would he assume so obvious a financial risk relying only on an off-handed, nebulous comment by Haug that his risk would be limited to his interest in the partnership. Furthermore, the fact Haug is an attorney by trade does not necessarily characterize each of his utterances as "legal advice," capable of being upheld as binding in the courts of this Commonwealth. In further support of the absence of an attorney/client relationship, we rely on the facts there was no express legal agreement between the parties, no fee arrangement was entered nor retainer paid, no particular legal ramifications of the deal were discussed, appellant's testimony offered no indication he asked Haug for legal counsel nor did Haug indicate he was Atkinson's attorney or attorney for the project. *See Sheinkopf, supra.* Indeed, appellant testified he

---

2. Having found there to be no attorney/client relationship, there is no need to reach the issue of the nature and extent of Haug's apparent authority. Accordingly, reliance on *Turner Hydraulics, Inc. v. Susquehanna Construction Corp.*, 414 Pa.Super. 130, 606 A.2d 532 (1992), wherein it was found the nature and extent of an agent's authority is a question of fact for the jury, is misplaced. *See also Joyner v. Harleysville Ins. Co.*, 393 Pa.Super. 386, 574 A.2d 664 (1990) (where the facts giving rise to the question of the existence of an attorney/client relationship are not in dispute, the question is properly decided by the court).

had used the services of other lawfirms prior to Kingsbury and it was Haug's belief appellant had continued to seek outside counsel regarding the Kingsbury project.

By investing in Kingsbury, Attorney Haug merely donned his investor hat and recruited friends and acquaintances to join in what each investor believed would be a profitable venture. Appellant's subjective belief an attorney/client relationship existed between he and Haug is an insufficient basis upon which to find there existed a genuine issue of material fact precluding summary judgment. Summary judgment on behalf of John T. Acton and John T. Acton, P.C., was properly entered.

Order affirmed.