

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2004

# Cap Surgical Sup Inc v. Casale

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4144

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Cap Surgical Sup Inc v. Casale" (2004). *2004 Decisions.* Paper 1066.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1066

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

NO. 02-4144

_____

CAPITOL SURGICAL SUPPLIES, INC.,
d/b/a CAPITOL MARKETING GROUP,

Appellant

v.

MICHAEL J. CASALE, JR; CASALE & BONNER, P.C.

———————————————————

On Appeal From the United States District Court
for the Middle District of Pennsylvania
(M..D. Pa. Civ. No. 01-cv-01338)
District Judge: Honorable Malcolm Muir

———————————————————

ARGUED OCTOBER 16, 2003

Before: SLOVITER, ROTH AND STAPLETON, <u>CIRCUIT JUDGES</u>

(Filed: January 28, 2004)

Gary P. Lightman, Esquire
Kristine Chrstensen, Esquire (Argued)
Lightman, Manochi & Kornilowicz
1520 Locust Street, 12th Floor
Philadelphia, PA 19102

<u>Counsel for Appellant</u>

1

Jeffrey B. McCarron, Esquire (Argued)
Kathleen M. Carson, Esquire
Swartz, Campbell & Detweiler
1601 Market Street
34th Floor
Philadelphia, PA 19103

Counsel for Appellees

_____

OPINION

_____

ROTH, Circuit Judge

Capitol Surgical Supplies d/b/a Capitol Marketing Group ("Capitol") appeals from the District Court's order granting summary judgment in favor of the defendants, Michael J. Casale, Jr., Esquire, and the law firm with which he is associated, Casale & Bonner, P.C. (collectively, "Casale"). Capitol's claims involve the alleged legal malpractice and related breach of contract by Casale. For the reasons that follow, we will affirm the District Court's judgment.

The background is set forth at length in the District Court's order. Thus, because we write for the parties, we will revisit the factual basis of the action only briefly. Capitol is a distributor of medical products. The shareholders of Capitol are Norman Horowitz and Sidney Stadler. Haven Pride, Inc. ("Haven Pride") is an entity formed in

2

1999 by Robert Meacham and George Greico for the purpose of manufacturing adult diapers; Capitol was one of the initial shareholders of Haven Pride, owning a 15% interest. At Meacham's request, Casale performed legal services regarding the formation of Haven Pride. In return for his services, Casale received Haven Pride stock equal to 2.5% of the company.

Under an exclusive distribution agreement, Capitol was the exclusive distributor of Haven Pride products. Initially, Capitol and Haven Pride operated under an agreement they had drafted themselves, without Casale's involvement. The entities later decided to form a new distribution agreement to replace the initial agreement. Meacham consulted with Casale regarding assistance with the new agreement and arranged a meeting with Horowitz at Casale's office to discuss it. Horowitz had never communicated with Casale before that meeting in early 2000, and both Stadler and Horowitz knew that Casale was Haven Pride's attorney. After the meeting, Horowitz and Stadler negotiated on Capitol's behalf to have certain provisions included in the agreement.

Casale drafted the new exclusive distribution agreement. Horowitz sent proposed changes to the new agreement to Casale, but there was no discussion with Casale regarding the legal ramifications of Capitol's proposed provisions. Casale did not provide any comment to Horowitz regarding the new agreement's terms. No one on Capitol's behalf asked Casale for legal advice during the negotiation of the agreement. Casale made no agreement to provide Capitol any legal assistance in connection with the

3

negotiations with Haven Pride. Capitol did not pay, or agree to pay, any amount to Casale for legal services. There was no written representation agreement between Capitol and Casale.

The new exclusive distribution agreement was executed by Horowitz and Stadler on Capitol's behalf, and by Meacham on Haven Pride's behalf. However, the business relationship between Capitol and Haven Pride deteriorated in the fall of 2000. Capitol filed a separate lawsuit against Haven Pride for breach of the exclusive distribution agreement. Capitol and Haven Pride reached a settlement in that action, but the course of that litigation revealed issues regarding the validity of the agreement.

On July 18, 2001, Capitol filed this action against Casale in the District Court under theories of negligence and breach of contract. Specifically, Capitol alleged that Casale was negligent and breached certain duties owed to Capitol in preparing the new exclusive distribution agreement, and that Casale breached a contract with Capitol regarding Capitol's instructions to prepare a valid and enforceable exclusive distribution agreement. Casale moved for summary judgment. By memorandum and order entered October 25, 2002, the District Court granted the motion, determining that no reasonable fact-finder could conclude that an attorney-client relationship existed between Capitol and Casale. In addition, the District Court concluded that Capitol had not sufficiently demonstrated any harm suffered as a consequence of Casale's alleged negligence. This appeal followed.

We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an order granting summary judgment. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). Summary judgment is appropriate when "no genuine issue [exists] as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts in the light most favorable to the nonmoving party and we draw all inferences in that party's favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997).

In order to prevail on its claims, Capitol had the burden of establishing the existence of an attorney-client relationship between the parties as a basis for Casale's owing Capitol a duty. In this case, it is undisputed that there was no express contract between Capitol and Casale for legal services. Therefore, Capitol had to establish the existence of an implied attorney-client relationship. Under Pennsylvania law,[1] an implied attorney-client relationship is shown if (1) the purported client sought advice or assistance from the attorney; (2) the assistance sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to provide such assistance; and (4) it is reasonable for the putative client to believe that the attorney was representing him. Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super 1993). A request for legal services, and an agreement to provide legal services, are necessary elements to form an attorney-client relationship. Cost v. Cost, 677 A.2d 1250, 1254-55 (Pa. 1996).

---

[1] There is no dispute that Pennsylvania law applies to this case.

5

The District Court concluded that the record is devoid of any evidence that Capitol sought Casale's legal services or that Casale agreed to provide legal counsel to Capitol. Capitol argues that the District Court ignored evidence that Horowitz and Meacham jointly sought Casale's legal assistance in drafting the new exclusive distribution agreement. In support, Capitol cites portions of deposition testimony by Horowitz, Stadler, and Meacham in which each indicated that the parties wanted to formalize their pre-existing agreement. Yet Horowitz also testified that Meacham initiated Casale's involvement with the new agreement and that his first contact with Casale occurred at the meeting arranged by Meacham. Moreover, Horowitz and Stadler both indicated elsewhere in their depositions that they did not request any legal services from Casale.

Capitol cites other evidence, such as Casale's references to multiple "clients" on his billing entries relating to the new exclusive distribution agreement, as well as instances where Casale had some direct communications with Capitol following their initial meeting. However, we agree with the District Court that, although these facts might bolster Capitol's contention that it held a subjective belief that Casale was representing Capitol, they do not create a genuine issue of material fact concerning whether Capitol requested, and Casale agreed to provide, legal services. A subjective belief that an attorney-client relationship was formed is an insufficient basis upon which to find the existence of a genuine issue of material fact precluding summary judgment.

6

Atkinson v. Haug, 622 A.2d at 987-88. We have considered Capitol's remaining arguments and find them without merit.

Upon review of the record and the parties' contentions, we agree that no attorney-client relationship was formed between the parties and, thus, that there was no basis for a duty to Capitol. For that reason, we need not reach the issue whether Capitol suffered any harm as a result of Casale's alleged breaches of duty. Accordingly, we will affirm the District Court's order granting summary judgment in favor of Casale.

_____

TO THE CLERK:

Please file the foregoing opinion.

By the Court,


/s/ JANE R. ROTH
Circuit Judge
_____

7

/S/ Walter K. Stapleton, Circuit Judge

STAPLETON, J., Dissenting:

I conclude that there is a material dispute of fact as to: (a) whether there was an attorney-client relationship between Capitol and Casale, and (b) whether Casale's alleged breach of duty to Capitol caused it to settle its litigation with Haven Pride for substantially less than it would have received in the absence of that breach. Accordingly, I would reverse and remand this case to the District Court for further proceedings.

The summary judgment record will support a finding that Capitol and Haven Pride made a joint request of Casale that he prepare a distribution agreement for them and that Casale honored that request by doing so. Horowitz and Stadler repeatedly insisted during their depositions that a joint request was made at the initial meeting.[2] If that testimony is credited, it is clear that Casale accepted the requested representation by drafting the

---

[2]Horowitz was asked at this deposition, "[D]id you make any specific request of Mr. Casale during the January 2000 meeting?" Horowitz replied, "That he put together an agreement for the business – for the distribution – to put together the distribution agreement to be a legally binding document. I think myself and Mr. Meacham did that." *(See* Appellees' App. at 76, 79.) This version of events was corroborated by Stadler, who testified that "[w]e all together asked [Casale] as a unit, just as a matter of discussion, that he would draft an agreement between Haven Pride and [Capitol]." *(See id.* at 262.) Moreover, there is documentary evidence tending to show that Horowitz requested legal advice from Casale. For example, on one of the draft versions of the distribution agreement, Horowitz made a notation next to the termination clause which read, "What do you suggest?" *(See* Appellees' App. at 104-05.) At his deposition, Horowitz testified that his question was directed to Casale. *(See id.)*

requested agreement and forwarding his draft to both Capitol and Haven Pride. Casale does not claim to have told Capitol that he was only representing Haven Pride, and his time records bear evidence which would support a finding that he understood this to be a joint representation. In any event, whether or not Casale subjectively believed he represented Capitol, the relevant issue is whether there is record evidence permitting a conclusion that a reasonable client in Capitol's position could have believed it was a joint representation. *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993). I conclude that there is.

While it is a closer question because the relevant record is less well developed, I also conclude that Capitol has proffered enough evidence to avoid summary judgment on the issue of whether Casale's alleged malpractice resulted in harm to Capitol. It is undisputed that Haven Pride asserted as a defense that the agreement was invalid because it was not approved in the manner required for contracts with a director.[3] While Horowitz and Stadler acknowledged that they may have had other reasons for settling as they did, their deposition testimony reflects their concern about this defense and would support a finding that they would not have settled on the terms they did but for that concern.

---

[3]The issue of whether the distribution agreement is invalid is not before us, and I would express no opinion regarding it.

9