STAPLETON, J.,
Dissenting.
STAPLETON, Judge.
I conclude that there is a material dispute of fact as to: (a) whether there was an attorney-client relationship between Capitol and Casale, and (b) whether Ca-sale’s alleged breach of duty to Capitol caused it to settle its litigation with Haven Pride for substantially less than it would have received in the absence of that breach. Accordingly, I would reverse and remand this case to the District Court for further proceedings.
The summary judgment record will support a finding that Capitol and Haven Pride made a joint request of Casale that he prepare a distribution agreement for them and that Casale honored that request by doing so. Horowitz and Stadler repeatedly insisted during their depositions that a joint request was made at the initial meeting.[2] If that testimony is credited, it is clear that Casale accepted the requested *510 representation by drafting the requested agreement and forwarding his draft to both Capitol and Haven Pride. Casale does not claim to have told Capitol that he was only representing Haven Pride, and his time records bear evidence which would support a finding that he understood this to be a joint representation. In any event, whether or not Casale subjectively believed he represented Capitol, the relevant issue is whether there is record evidence permitting a conclusion that a reasonable client in Capitol’s position could have believed it was a joint representation. Atkinson v. Haug, 424 Pa.Super. 406, 622 A.2d 983, 986 (1993). I conclude that there is.
While it is a closer question because the relevant record is less well developed, I also conclude that Capitol has proffered enough evidence to avoid summary judgment on the issue of whether Casale’s alleged malpractice resulted in harm to Capitol. It is undisputed that Haven Pride asserted as a defense that the agreement was invalid because it was not approved in the manner required for contracts with a director.[3] While Horowitz and Stadler acknowledged that they may have had other reasons for settling as they did, their deposition testimony reflects their concern about this defense and would support a finding that they would not have settled on the terms they did but for that concern.

. Horowitz was asked at this deposition, "[D]id you make any specific request of Mr. Casale during the January 2000 meeting?” Horowitz replied, "That he put together an agreement for the business — for the distribution — to put together the distribution agreement to be a legally binding document. I think myself and Mr. Meacham did that.” (See Appellees’ App. at 76, 79.) This version of events was corroborated by Stadler, who testified that "[w]e all together asked [Casale] as a unit, just as a matter of discussion, that he would draft an agreement between Haven Pride and [Capitol].” (See id. at 262, 622 A.2d 983.) Moreover, there is documentary evidence tending to show that Horowitz requested legal advice from Casale. For example, on one of the draft versions of the distribution agreement, Horowitz made a notation next to the termination clause which read, “What do you suggest?” (See Appellees’ App. at 104-05.) At his deposition, Horowitz testified that his question was directed to Casale. (See id.)

. The issue of whether the distribution agreement is invalid is not before us, and I would express no opinion regarding it.