Circulated 09/23/2022 09:46 AM

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| JOHN BROWN AND RDS VENDING, L.L.C., | | March Term 2019 No. 3075 |
| | Plaintiffs, | |
| v. | | Commerce Program |
| ALAN SIMONS, | | Control Number 21044953 |
| | Defendant. | 71 EDA 2022 |

## OPINION

**Nina Wright Padilla, S.J.**                                    **March 21, 2022**

Defendant Alan Simons ("Simons") appeals this court's order dated and docketed December 13, 2021, denying his motion to disqualify Buchanan Ingersoll & Rooney, P.C. ("Buchanan"). For the reasons discussed below, this court's order should be affirmed.

Plaintiff John Brown ("Brown") is an adult individual and a 50% member of Plaintiff RDS Vending, LLC. ("RDS").[1] RDS is a Delaware limited liability company with its principal place of business at 220 East Washington Street, Norristown, Pennsylvania 19401.[2] RDS is engaged in the business of selling food, beverages, and tobacco products to the public through vending machines at various locations throughout the Philadelphia region.[3] Simons is an adult

---

[1] Complaint ¶ 2.

[2] See id. ¶ 1.

[3] See id. ¶ 6.

OPFLD-Brown Etal Vs Simons



19030307500234

1

individual and a 50% member and the manager of RDS.[4] Simons as the manager of RDS controlled daily operations of RDS, while Brown has not participated in its day-to-day operations.[5]

On January 1, 2007, Simons executed an employment agreement with RDS providing that Simons should serve as the President, CEO, and the manager of RDS.[6] In September 2011, Simons and RDS executed an amended employment agreement.[7] In October 2015, Simons and RDS executed the second amended employment agreement.[8]

In 2012, Brown and Simons formed a limited liability company called "Rite-Vend, LLC" ("Rite Vend").[9] For the task of forming Rite Vend, in 2012 RDS retained Buchanan.[10] All invoices for Buchanan's legal services were directed to and paid by RDS, and not Simons.[11]

---

[4] *See id.* ¶ 3.

[5] *See* Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions, p. 3.

[6] *See* Employment Agreement as Exhibit A to the Complaint.

[7] *See* Amendment to Employment Agreement as Exhibit B to the Complaint.

[8] *See* Second Amendment to Employment Agreement as Exhibit C to the Complaint.

[9] *See* Operating Agreement of Rite-Vend, LLC. as Exhibit 2 to the Motion to Disqualify Buchanan Ingersoll & Rooney, PC. filed on Aril 29, 2021; *see also* Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions filed on May 19, 2021, pp 6-7.

[10] *See* Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions filed on May 19, 2021, p 7.

[11] *See id.* (The invoices were dated from September 2012 through February 2016); *see also* Invoices for Rite-Vend, LLC. related work as Exhibit 1 to Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions filed on May 19, 2021.

Buchanan claimed that it has done no legal work for RDS regarding Rite-Vend, since January 2016.[12]

In 2013, RDS retained Buchanan again, in order to form Regal Vending ("Regal").[13] On October 16, 2013, Buchanan and RDS executed an agreement, entitled "Engagement Agreement" ("Agreement").[14] The Agreement provides as follows: "The Company is our sole client with respect to this engagement. Individuals or entities that are affiliated with the Company, such as its equity owners, members, officers, directors...or other affiliates, are not clients of the Firm, unless we otherwise agree in writing".[15] Buchanan issued invoices dated November 2013 through March 2015, and the invoices were billed to RDS.[16]

On March 25, 2019, Brown and RDS filed a complaint against Simons for breach of the Employment Agreement, breach of the Operating Agreement, breach of the implied covenant of good faith and fair dealing, conversion, and accounting. On April 16, 2019, Simons filed preliminary objections to the complaint. The preliminary objections were overruled by this court's order dated October 4, 2019, and docketed October 8, 2019. On October 16, 2019, Simons filed a notice of appeal from the order overruling the preliminary objections. On October 17, 2019, this court ordered Simons to file a concise statement of the errors complained of on

---

[12] *See* Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions filed on May 19, 2021, p. 8.

[13] *See id.* p. 11; *see also* Motion to Disqualify Buchanan Ingersoll & Rooney, PC. filed on April 29, 2021, ¶ 34.

[14] *See* Engagement Agreement – RDS Vending, LLC. as Exhibit 9 to the Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions.

[15] *See id.* RDS was referred to as "the Company".

[16] *See* Invoices as Exhibit 10 to the Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions.

3

appeal. On November 1, 2019, Simons filed a concise statement of issues on appeal. On December 17, 2019, Simons filed a praecipe to withdraw the notice of appeal.

On July 23, 2019, the Plaintiffs filed a motion for preliminary injunction. The motion was denied without prejudice by this court's order dated October 4, 2019, and docketed October 8, 2019. On March 9, 2020, Simons filed an answer with new matter to the complaint.

On April 13, 2020, Simons filed a petition to disqualify Buchanan Ingersoll & Rooney, P.C.[17] On May 4, 2020, the Plaintiffs filed the memorandum of law in opposition to the Defendant's petition to disqualify. On October 20, 2020, this court ordered that the Defendant's petition to disqualify was withdrawn without prejudice.

On May 14, 2020, the Plaintiffs filed a renewed motion for preliminary injunction. On June 3, 2020, Simons filed a response in opposition to the Plaintiff's renewed motion. On December 31, 2020, this court denied the renewed motion.

On April 29, 2021, Simons filed both the Motion to Disqualify Buchanan Ingersoll & Rooney, P.C. ("Motion") and a memorandum of law in support of the motion. On May 19, 2021, the Plaintiffs filed both the Response in Opposition to Defendant's Second Motion to Disqualify ("Response") and the Memorandum of Law in Opposition to the Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions ("Memo"). On November 18, 2021, a hearing on the Motion was held. On December 13, 2021, this court entered the order denying the Motion.

---

[17] Simons filed a motion to disqualify Buchanan two times. On April 13, 2020, he filed the first motion, which he withdrew on the ground of insufficient evidence in support of the motion. (N.T. November 18, 2021, 16:7-18). On April 29, 2021, he filed the second motion to disqualify Buchanan, which was denied by this court's order dated December 13, 2021. Simons appealed from the order denying the second motion.

On December 14, 2021, Simons filed a notice of appeal from this court's order docketed December 13, 2021. This opinion is submitted in support of this court's order docketed December 13, 2021.

## DISCUSSION

**1.  The Motion to Disqualify Buchanan Ingersoll & Rooney, P.C. was properly denied.**

A former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with the law firm has the burden of proving: (1) that a past attorney-client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law.[18] Here, Simons failed to meet the three-prong test under *Estate of Pew*, by failing to establish a past attorney-client relationship.[19]

**1.1. No Express Attorney-Client Relationship Exists.**

Simons failed to establish an express attorney-client relationship between Simons and Buchanan. First, regarding Buchanan's legal services for the formation of Rite-Vend, there is no express agreement indicating that Simons retained Buchanan. Although Buchanan issued

---

[18] *See Estate of Pew*, 655 A.2d 521, 545 - 46 (Pa. Super. Ct. 1994) (citation omitted).

[19] Most of Simons' arguments in the Motion is focused on the second prong of the test: the subject matter of the relationship was substantially related. However, regardless of whether the Simons' arguments prevail or not, he cannot prove that Buchanan should be disqualified without establishing the attorney-client relationship.

5

invoices for the legal services, these invoices cannot be evidence for an express attorney-client relationship.[20]

Second, regarding Buchanan's legal services for the formation of Regal, an express agreement demonstrates that it was RDS, not Simons, that retained Buchanan.[21] On October 11, 2013, Buchanan sent RDS a letter containing the Agreement.[22] The Agreement was signed by Simons on October 16, 2013. The letter begins with the following:

> Dear Alan:
>
> Buchanan Ingersoll & Rooney PC ("Buchanan Ingersoll & Rooney" or the "Firm") is pleased to **accept the request of RDS Vending, LLC. (the "Company") for legal representation**…this engagement agreement (the "Agreement") confirms the terms on which **Buchanan Ingersoll & Rooney will provide legal services to the Company** in connect with pursuing vending opportunities with the Philadelphia Airport and other matters as to which we accept your request for legal representation.[23]

The Agreement further provides that the scope of the representation is expressly limited to the representation of RDS alone.[24]

> Scope of Representation
>
> **The Company is our sole client** with respect to this engagement. **Individuals or entities that are affiliated with the Company, such as its equity owners, members, officers**, directors, parent entities, joint ventures, subsidiaries or other affiliates, **are not clients of the Firm, unless we otherwise agree in writing**.[25]

---

[20] *See* Invoices for Rite-Vend, LLC. related work as Exhibit 1 to the Memo.

[21] *See* Engagement Agreement – RDS Vending, LLC. as Exhibit 9 to the Memorandum of Law in Opposition to Defendant's Second Motion to Disqualify and in Support of Cross-Motion for Sanctions.

[22] *See id.*

[23] *Id.* (bold added).

[24] *See id.*

[25] *Id.* (bold added).

6

The Agreement expressly precludes the representation of RDS's equity owners, members, officers, and other individuals or entities affiliated with RDS. Here, Simons is both a manager and owner of RDS.[26] Pursuant to the Agreement, the representation of Simons is out of the scope of the agreed representation, because Simons falls into the category of individuals affiliated with RDS. In addition, Simons failed to provide any evidence demonstrating that Buchanan separately agreed to represent Simons in writing. Therefore, Simons failed to prove the existence of a prior express attorney-client relationship with Buchanan.

### 1.2. No Implied Attorney-Client Relationship Exists.

When no express attorney-client relationship exists, a party seeking to disqualify counsel should establish the existence of an implied attorney-client relationship.[27] An implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him.[28]

Pennsylvania courts considered the following factors in determining whether an implied attorney-client relationship exists: 1) whether a fee arrangement was entered into between an alleged attorney and alleged client; 2) whether the attorney's services were billed to the client; 3) whether the client paid fees for the services; 4) whether the client expressly requested the

---

[26] *See* the Motion, ¶¶ 6, 8.

[27] *See Johnson v. Buchanan Ingersoll & Rooney, P.C.,* 2013 WL 11272844 *4.

[28] *See Atkinson v Haug,* 622 A.2d 983, 986 (Pa. Super. Ct. 1993) (citing *Sheinkopf v. Stone,* 927 F.2d 1259 (1st Cir. 1991)).

7

counsel to represent her or his individual interests; 5) whether the attorney represented the client in particularized or individual maters; and so on.[29]

*Johnson* concluded that no implied attorney-client relationship existed on the following grounds: no fee arrangement was entered into; no retainer or fees were paid; and there was no discussion of the legal implications of the issue at hand.[30] *Johnson* held that merely working toward the common goal of consummating the transaction does not give rise to an attorney-client relationship.[31] *Johnson* found no attorney-client relationship when the alleged client failed to establish that the counsel agreed to furnish any legal assistance to him "in addition to and separate from" the counsel's duties to his client.[32]

Here, Simons failed to provide evidence that there was an implied attorney-client relationship. No fee arrangement was entered into between Buchanan and Simons. Buchanan's services were not billed to Simons individually. Rather all the invoices for Buchanan's services were directed to RDS.[33] There is no evidence that Simons paid fees to Buchanan for Buchanan's legal services. Here the mere fact that Simons, as the manager of RDS, worked toward the goal of forming Rite-Vend or Regal does not give rise to an attorney-client relationship. Simons failed to establish that Buchanan Ingersoll agreed to provide legal services to him in addition to and separate from Buchanan's already existing duties to RDS.

---

[29] *See Sebia v McNees Wallace & Nurick, LLC.* 2014 WL 10965705; *see also Johnson*, 2013 WL 11272844 *6; *see also First Republic Bank v. Brand* 2001 WL 1112972 *6.

[30] *See Johnson*, 2013 WL 11272844 * 6.

[31] *See id.* *5.

[32] *See id.*

[33] *See* Invoices for Rite-Vend, LLC. related work as Exhibit 1 to the Memo; *see also* Invoices as Exhibit 10 to the Memo.

As grounds for an implied attorney-client relationship between Simons and Buchanan, Simons argued: 1) Buchanan negotiated and created the documents concerning the ownership structure and the later changes thereto; 2) Simons directly communicated with Buchanan on many legal issues by email and telephone; 3) Simons sought the advice of counsel of Buchanan on the Rite-Vend transaction and the counsel provided advice within their spheres of practice; 4) under *Kirschner v. K & L Gates, LLP*, 46 A.3d 737 (Pa. Super. Ct. 2012), the court should conclude that Buchanan and Simons have an implied attorney-client relationship; and so on.[34]

Simons' arguments do not prevail. First, an attorney-client relationship is not based on the work of creating documents for an underlying transaction.[35] *Sebia* held that drafting documents is not a sufficient ground for such a relationship and that the establishment of the relationship requires an attorney to counsel the client "specifically and particularly".[36] *Sebia* held that if an attorney-client relationship comes into existence merely because the attorney provides a person some indirect benefits, then an attorney representing one party in a commercial transaction would almost invariably end up representing all of the parties in the transaction, an untenable situation.[37]

Unlike Simons' argument, *Kirschner* is distinguished from the instant matter. In *Kirschner*, the court found an implied attorney-client relationship between counsel and Le Nature, i.e., the company, although the engagement agreement was entered into between the

---

[34] *See* Memorandum of Law in Support of the Motion to Disqualify Buchanan Ingersoll & Rooney, PC., pp13 – 15.

[35] *See Sebia,* 2014 WL 10965705 *6.

[36] *See id* (citing *First Republic Bank v. Brand* 2001 WL 1112972).

[37] *See id.*

counsel and the Special Committee of the company. *Kirschner* found an implied relationship between the counsel and the company, because The Special , owing a fiduciary duty to RDS, was authorized to retain counsel to investigate fraud "on behalf of the company".[38] The purpose of retaining counsel in *Kirschner* was to serve Le Nature's interests. Unlike *Kirschner*, here the purpose of retaining Buchanan was to serve the interests of RDS, and not Simons' interests.[39] RDS also doesn't owe a fiduciary duty to Simons.

In addition, the counsel in *Kirschner* agreed to bill the company for its services and the company paid for the services.[40] Here Buchanan did not bill Simons. It was RDS that Buchanan billed for its legal services and that paid for the services.

### 1.3. Where No Attorney-Client Relationship Exists, the Motion to Disqualify Buchanan Was Properly Denied.

Under *Estate of Pew*, a party seeking disqualification should prove, among others, the existence of a past attorney-client relationship.[41] Here Simons, while seeking the disqualification of Buchanan, argued that Buchanan represented Simons through RDS, and there is at least an implied attorney-client relationship. However, the Agreement demonstrates that there was no express attorney-client relationship between Simons and Buchanan. Also, Simons failed to provide evidence demonstrating that there was an implied attorney-client relationship. Since Simons failed to establish an attorney-client relationship with Buchanan, under *Estate of Pew* the Defendant's Motion to Disqualify was properly denied.

---

[38] *Kirschner v. K & L Gates, LLP*, 46 A.3d 737, 749 (Pa. Super. Ct. 2012).

[39] *See* Exhibit 9 to the Memo (bold added).

[40] *See Kirschner*, 46 A.3d at 755.

[41] *See* 655 A.2d 521, 545 - 46 (Pa. Super. Ct. 1994).

## CONCLUSION

For the foregoing reasons, this court's order dated December 13, 2021 denying

Defendant's motion to disqualify Buchanan Ingersoll & Rooney, P.C. should be affirmed.

Respectfully Submitted,

BY THE COURT:

_____
NINA WRIGHT PADILLA, S.J.

J-A21040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JOHN BROWN AND RDS VENDING, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALAN SIMONS | : | |
| | : | No. 71 EDA 2022 |
| Appellant | : | |

Appeal from the Order Entered December 13, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190303075

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED SEPTEMBER 30, 2022**

Alan Simons (Appellant) appeals from the order denying his motion to disqualify the law firm of Buchanan Ingersoll & Rooney, P.C. (Buchanan) from representing John Brown and RDS Vending, LLC (RDS), the plaintiffs in the underlying breach of contract dispute brought against Appellant in the Philadelphia County Court of Common Pleas.  After careful review, we affirm.

The trial court set forth the underlying facts and procedural history as follows:

> Plaintiff John Brown ("Brown") is an adult individual and a 50% member of Plaintiff RDS Vending, LLC. ("RDS").  RDS is a Delaware limited liability company with its principal place of business at 220 East Washington Street, Norristown, Pennsylvania 19401.  RDS is engaged in the business of selling food, beverages, and tobacco products to the public through vending machines at various locations throughout the Philadelphia region.  [Appellant] is an adult individual and a 50% member and the manager of RDS. [Appellant] as the manager of RDS controlled daily operations of

RDS, while Brown has not participated in its day-to-day operations.

On January 1, 2007, [Appellant] executed an employment agreement with RDS providing that [he] should serve as the President, CEO, and the manager of RDS. In September 2011, [Appellant] and RDS executed an amended employment agreement. In October 2015, [Appellant] and RDS executed the second amended employment agreement.

In 2012, Brown and [Appellant] formed a limited liability company called "Rite-Vend, LLC" ("Rite Vend"). For the task of forming Rite Vend, in 2012 RDS retained Buchanan. All invoices for Buchanan's legal services were directed to and paid by RDS, and not [Appellant]. Buchanan claimed that it has done no legal work for RDS regarding Rite-Vend, since January 2016.

In 2013, RDS retained Buchanan again, in order to form Regal Vending ("Regal"). On October 16, 2013, Buchanan and RDS executed an agreement, entitled "Engagement Agreement" ("Agreement"). The Agreement provides as follows: "The Company is our sole client with respect to this engagement. Individuals or entities that are affiliated with the Company, such as its equity owners, members, officers, directors . . . or other affiliates, are not clients of the Firm, unless we otherwise agree in writing[."] Buchanan issued invoices dated November 2013 through March 2015, and the invoices were billed to RDS.

On March 25, 2019, Brown and RDS filed a complaint against [Appellant] for breach of the Employment Agreement, breach of the Operating Agreement, breach of the implied covenant of good faith and fair dealing, conversion, and accounting. On April 16, 2019, [Appellant] fled preliminary objections to the complaint. The preliminary objections were overruled by [the trial] court's order dated October 4, 2019, and docketed October 8, 2019. On October 16, 2019, [Appellant] filed a notice of appeal from the order overruling the preliminary objections. On October 17, 2019, [the trial] court ordered [Appellant] to file a concise statement of errors complained of on appeal. On November 1, 2019, [Appellant] filed a concise statement of issues on appeal. On December 17, 2019, [Appellant] filed a *praecipe* to withdraw the notice of appeal.

On July 23, 2019, [Brown and RDS] filed a motion for preliminary injunction. The motion was denied without prejudice by [the trial] court's order dated October 4, 2019, and docketed October 8, 2019. On March 9, 2020, [Appellant] filed an answer with new matter to the complaint.

On April 13, 2020, [Appellant] filed a petition to disqualify Buchanan [pursuant to Pennsylvania Rule of Professional Conduct 1.9]. . . .[17] On May 4, 2020, [Brown and RDS] filed the memorandum of law in opposition to [Appellant]'s petition to disqualify. On October 20, 2020, [the trial] court ordered that [Appellant]'s petition to disqualify was withdrawn without prejudice.

[17] [Appellant] filed a motion to disqualify Buchanan two times. On April 13, 2020, he filed the first motion, which he withdrew on the ground of insufficient evidence in support of the motion. On April 29, 2021, he filed the second motion to disqualify Buchanan, which was denied by [the trial] court's order dated December 13, 2021. [In that order, the court stated:

This motion to disqualify counsel is, as [Brown and RDS] point[ ] out, nearly identical to the motion to disqualify initially filed by [Appellant] in April 2020, for which [he] sought discovery and which, upon being denied discovery, [he] voluntarily withdrew. In the months that followed, no further information has been added to the motion to show why disqualification is necessary. Moreover, the initial motion to disqualify was filed significantly after Rite-Vend was brought into the case, as Rite-Vend was actually first involved when subpoenas were served upon it in September 2019, seven months prior to the filing of the motion.

\* \* \*

[Appellant] argues that the involvement of the Buchanan Ingersoll law firm in the creation of Rite-Vend creates a conflict of interest so extreme as to make a fair trial impossible. The [trial c]ourt cannot agree. "[A] former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with a member of the law firm has

- 3 -

the burden of proving: (1) that a past attorney/client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law." [*Estate*] *of Pew*, 655 A.2d 521, 545-46 (Pa. Super. 1994). [Appellant] has not provided the court with persuasive evidence of any of these three prongs. . . .

Order, 12/13/21, at 1 n.1 (unpaginated).] [Appellant] appealed from the order denying the second motion.

On May 14, 2020, [Brown and RDS] filed a renewed motion for preliminary injunction. On June 3, 2020, [Appellant] filed a response in opposition to [Brown's and RDS's] renewed motion. On December 31, 2020, [the trial] court denied the renewed motion.

On April 29, 2021, [Appellant] filed both the motion to disqualify Buchanan . . . ("Motion") and a memorandum of law in support of the motion. On May 19, 2021, [Brown and RDS] filed both the response in opposition to [Appellant]'s second motion to disqualify ("Response") and the memorandum of law in opposition to [Appellant]'s second motion to disqualify and in support of cross-motion for sanctions ("Memo"). On November 18, 2021, a hearing on the motion was held. On December 13, 2021, [the trial] court entered the order denying the motion.

Trial Ct. Op., 3/21/22, at 1-4 (some footnotes and capitalization omitted).

This timely appeal followed.[1]

Appellant raises the following issues:

---

[1] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court did issue a Pa.R.A.P. 1925(a) opinion on March 21, 2022.

1. Whether the trial court erred in denying [Appellant's] motion to disqualify opposing counsel, where opposing counsel had represented [Appellant] in a related matter under and then asserted claims against [Appellant] directly related to that matter and opposing counsel's own representation of [Appellant?]

2. Whether the trial court erred in dismissing without [a] decision the motion to compel discovery of [Appellant] concerning documents and testimony relevant to the issue of disqualification[?]

Appellant's Brief at 5 (some capitalization omitted).

Preliminarily, we observe that an order denying a motion to disqualify a law firm based on conflict of interest is immediately appealable as a collateral order. *Dougherty v. Phila. Newspapers, LLC*, 85 A.3d 1082, 1086 (Pa. Super. 2014); *see also* Pa.R.A.P. 313 (governing collateral orders).

Furthermore:

When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review. Courts may disqualify attorneys for violating ethical rules. On the other hand, courts should not lightly interfere with the right to counsel of one's choice. Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

*E.R. v. J.N.B.*, 129 A.3d 521, 526 (Pa. Super. 2015) (citation omitted).

*Rudalavage v. PPL Elec. Utils. Corp.*, 268 A.3d 470, 478 (Pa. Super. 2022)

(footnoted omitted).

Pennsylvania Rule of Professional Conduct 1.9 addresses attorney duties

to former clients and provides, in pertinent part, as follows:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a

substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

\* \* \*

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa.R.P.C. 1.9(a), (c)(1) – (2).

Moreover, it merits repeating that pursuant to **Estate of Pew**,

a former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with a member of the law firm has the burden of proving: (1) that a past attorney/client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law.

**Estate of Pew**, 655 A.2d at 545-46.

Appellant first complains that he did establish the first prong of the **Estate of Pew** test (the existence of a past attorney-client relationship), and that the trial court erred in denying his motion to disqualify Buchanan because it failed to find that he had an implied attorney-client relationship with Buchanan. Appellant's Brief at 22. Moreover, he claims the court failed to

examine the evidence [presented] at the hearing on the second motion for disqualification, which he alleges "makes it clear that Buchanan represented not RDS, but also Brown and [Appellant.]" *Id.* at 22. Relying primarily on an April 19, 2013, letter from Alfred J. D'Angelo, Jr., Esq. of Buchanan to Robert Gleason, Jr., a field examiner for the National Labor Relations Board, Appellant states: "Buchanan represented him, specifically and personally, by its own admission, because Buchanan represented to the U.S. government that [he] and [Brown], not RDS, were the interested parties in the Rite-Vend transaction." *Id.*, *citing* R.R. at 2505a-06a.[2] In support, Appellant points to the following statement in the letter: "RDS and Rite-Vend are owned by common users. When the owners of RDS sought to purchase assets from Canteen [Vending Services], they decided to set up a separate corporation for the purchase. That was done to address liability and tax issues." R.R. at 2505a-06a. Appellant maintains that because Buchanan set up the new corporation, Rite-Vend, and told him how to run its operations and how to take a salary from it, "[t]here could be no clearer statement of who exactly Buchanan represented in the Rite-Vend transaction: not RDS, but the owners of RDS, including [Appellant], who set up a 'separate corporation' for tax and liability reasons." Appellant's Brief at 25.

---

[2] Appellant's reproduced record indicates the April 19, 2013, letter was submitted as an exhibit for the November 18, 2021, argument on the motion to disqualify.

- 7 -

Moreover, he asserts there was evidence of an imputed attorney-client relationship:

> Buchanan . . ., in a written communication, referred to [Appellant] as a client to a third party, going so far as to include [him] as a joint client with Brown in that communication. [Appellant] was included in emails discussing revisions to deal documents for Rite-Vend on an equal basis with Brown. Buchanan . . . directly communicated primarily with [Appellant] on labor issues by email and telephone — consistent with its later representation to the NLRB about the Rite-Vend transaction. These facts, and the other incontrovertible evidence submitted in the petition to disqualify as well as the evidence submitted at argument on the motion, make it apparent that there is at least an imputed attorney-client relationship between [Appellant] and Buchanan. . . .

Appellant's Brief at 25 (emphasis omitted). Appellant also relies on **Kirschner v. K & L Gates LLP**, 46 A.3d 737 (Pa. Super. 2012) to support his implied attorney-client relationship argument.[3]

After a thorough review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the trial court, we conclude there is no merit to Appellant's first issue, and we affirm on the basis of the court's opinion. **See** Trial Ct. Op. at 5-10 (finding that Appellant did not meet the first prong of the **Estate of Pew** test based on the following: (1) Appellant failed to establish an express attorney-client relationship between Buchanan

---

[3] Appellant also addresses the second and third prongs of the **Estate of Pew** test in his argument. **See** Appellant's Brief at 29-32. As will be discussed below, because we agree with the analysis set forth by the trial court that Appellant did not demonstrate the first prong of the test, and therefore adopt it as our own, we need not address these assertions further.

and himself existed where (a) there was no express agreement indicating that Appellant retained Buchanan at the time when the law firm provided legal services for the formation of Rite-Vend and (b) while there was an express agreement for the formation of Regal — it was RDS, not Appellant, that retained Buchanan; (2) when Buchanan sent RDS a letter about the Regal Agreement, the law firm explicitly averred that it accepted the request of RDS for legal representation and it would provide legal services to the business;[4] (3) the Regal Agreement provided that RDS was Buchanan's "sole client" and any "[i]individuals or entities that are affiliated with [RDS], such as its equity owners, members, officers . . . are not clients of the Firm, unless [the parties] otherwise agree in writing[,]"[5] thereby, expressly precluding the firm's representation of Appellant since he was both a manager and owner of RDS; (4) Appellant failed to establish an implied attorney-client relationship between Buchanan and himself existed where (a) there was no fee arrangement entered into between Buchanan and Appellant, (b) Buchanan's bills were not billed to Appellant individually but rather, were directed to RDS,

_____

[4] **See** Brown's and RDS's Memorandum of Law in Opposition to Appellant's Petition to Disqualify and in Support of Cross-Motion for Sanctions (Brown's and RDS's Opposition to Appellant's Petition to Disqualify), 5/4/20, Exhibit 9 at 1 (unpaginated) (October 11, 2013, Letter from Buchanan to Appellant regarding "Engagement Agreement – RDS Vending, LLC").

[5] **See** Brown's and RDS's Opposition to Appellant's Petition to Disqualify, Exhibit 9 at 2 (unpaginated).

(c) there was no evidence that Appellant paid fees to Buchanan for the firm's legal services, (d) the fact that Appellant, as RDS manager, worked toward the goal of forming Rite-Vend and Regal did not give rise to an attorney-client relationship; and (e) Appellant failed to demonstrate that Buchanan" agreed to provide legal services to him in addition to and separate from Buchanan's already existing duties to RDS[;]" and (5) *Kirschner* is distinguishable because there, an implied attorney-client relationship was established since the purpose of retaining counsel was to investigate fraud on behalf of the company and serve its interests whereas here, the purpose of retaining Buchanan was to service the interests of RDS and not Appellant). Accordingly, we do not disturb the trial court's determination as Appellant's first argument is unavailing.

In Appellant's second issue, he claims the court erred in denying his motion to compel the deposition and discovery of Buchanan. *See* Appellant's Brief at 32. He alleges that he sought to depose Jonathan Goldsmith, an attorney for Buchanan, and "obtain records related to" Buchanan's "representation of" him. *Id.* He then states:

> At argument on the first motion to disqualify, the trial court agreed that [he] could withdraw the motion to disqualify in order to allow his motion to compel to be heard. Instead, the trial court marked [his] discovery motion moot without decision or notice under [Pa.R.C.P.] 236. The trial court abused its discretion as it failed to even rule on the discovery motion, without notice to the parties under Rule 236, which states that notice of decisions shall be provided by the court. Furthermore, the failure of the trial court to consider [his] motion to compel is contrary to the record made on September 30, 2020, when the procedure of withdrawal

of the disqualification motion and then ruling on the discovery motion was not only contemplated by the court, but offered by the court and induced action by [Appellant].

*Id.* at 33 (some capitalization omitted).

Appellant's second issue fails for several reasons. First, it merits mention that Appellant's notice of appeal was limited to the December 13, 2021, order denying his disqualification motion, and does not discuss a mooted discovery motion. As Buchanan points out, the trial court "would have had neither the reason nor the opportunity to address the mooting of [Appellant]'s motion in its Rule 1925(a) opinion. . . . Brown will be prejudiced if this Court considers the mooting of the motion without the benefit of the trial court's explanation as to its use of its discretion to moot the motion." Buchanan's Brief at 39-40 (some capitalization omitted). Second, a discovery order is generally interlocutory and non-appealable. *See Robec, Inc. v. Poul*, 681 A.2d 809, 811 (Pa. Super. 1996) (absent unusual circumstances, this Court will not review discovery orders prior to final judgment in the main action). Appellant presents no argument that the mooting of his discovery motion qualifies as a collateral order pursuant to Pa.R.A.P. 313(b). *See In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012) (a collateral order is defined as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost."). Third, Appellant

fails to cite to any case law that is relevant to his claim and thus, it amounts to a mere bald assertion. Accordingly, Appellant's second issue fails.

We direct that a copy of the trial court's March 21, 2022, opinion be filed along with this memorandum and attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022